BURKE ET AL., APPELLANTS, *v.* FOUGHT, APPELLEE.

(No. L-77-121—Decided March 17, 1978.)

*Mr. George R. Hewes,* for appellants.

*Mr. Frank T. Pizza* and *Mr. William Bracey,* for appellee.

POTTER, P. J.   This case[1] raises the question of the constitutionality of the acts and proceedings of the Toledo Consumer Protection Agency pursuant to the power vested in it

---

[1] It has had a variety of captions, to wit: In the matter of the Cease and Desist Complaint against Mrs. Irene Burke dba Bridal Aisle Boutiques; City of Toledo and Debbie Mangas, Joyce Collingwood, Linda Tipping and Betty Lorraine Strouse v. Irene Burke, dba Bridal Aisle Boutique. The appellants mistakenly reversed the parties in the caption when their appeal was filed in the Common Pleas Court. See App. R. 3(C)

by the Toledo Consumer Sales Practices Act, Chapter 26 of The Toledo Municipal Code.

Mr. Thomas E. Fought, Chief Inspector of Weights and Measures, has certain prescribed duties and authority under the ordinance.

Section 26-7-30(2)(A) provides:

"2. In addition to any other powers vested in the Chief Inspector to enforce federal, state or local law, he shall have the following powers and duties:

"A. Exercise general supervision over the personnel assigned to enforce the laws pertaining to consumer protection."

Pursuant to Section 26-7-32(1)(A) and (B) of the Toledo Municipal Code, the Chief Inspector has the following administrative powers:

"A. As provided in this Section, the Chief Inspector shall investigate, hear, and determine complaints of violations of this article. He shall seek voluntary compliance with the provisions of this article, upon agency investigation of the alleged violation and determination of reasonable cause, issue cease and desist complaints upon reasonable cause, hold hearings as provided in this Section, subpoena witnesses and relevant matter as he deems necessary to facilitate the hearing procedure, and issue cease and desist orders as provided by this Section.

"B. The Chief Inspector may grant a stay of any cease and desist order issued pursuant to this Section for good cause shown conditioned upon the posting of a bond with good and sufficient surety by the respondent in an amount to be set by the Chief Inspector to immunize consumers from harm or loss. The Chief Inspector may deny a stay of his order if he certifies that he has reasonable cause to believe that a public emergency exists."

Section 26-7-32 of the Toledo Municipal Code permits hearings by the Chief Inspector when these procedures are adhered to:

"A. The Chief Inspector, having found reasonable cause to believe a violation of this article exists or has occurred, and having been unable to achieve voluntary compliance, shall set the case for hearing. Said hearing shall be held in a timely manner, but no sooner than fourteen (14) days from the mail-

ing of notice of such hearing to the supplier according to the procedures set out in Section 26-7-32(2)(A) of this article. A copy of the cease and-desist complaint shall accompany the notice of the hearing. Such notice shall include:

"1. The date, time and place of the hearing.

"2. The supplier's right to legal counsel.

"3. The supplier's right to present evidence, including witnesses.

"4. Advice that copies of the Code, Agency Rules and Regulations, and consumer complaints against the supplier may be inspected at the agency during regular business hours.

"5. Advice that failure to appear at the hearing may cause a cease and desist order to be issued.

"6. A description of any information or documents requested by the agency or subpoenaed by the Chief Inspector which the supplier is to bring with him to the hearing.

"7. Advice that the Chief Inspector may for good cause shown, grant a continuance of the hearing date upon request of the supplier or the agency staff."

The above sections of the Toledo Municipal Code designate the Chief Inspector for the Toledo Consumer Protection Agency as the fact-finding entity.

Several consumers complained to the Toledo Consumer Protection Agency about allegedly deceptive practices on the part of Bridal Aisle Boutiques at Lagrange Street and at Reynolds Road. These complaints were referred to an agency staff member who was under the general supervision of the Chief Inspector of Weights and Measures (see Toledo Municipal Code Section 26-7-30(2)(A), *supra*) for investigation.

As a result of that investigation, seven counts, involving multiple violations of Toledo Municipal Code, Deceptive Acts or Practices, Section 26-7-10(1)(A)(2), (5), (10); Rule on Deposits, Section 26-7-31(3)(A)(2)(a)(b)(e)(f) and Rule on Failure to Deliver/Substitution of Goods, Section 26-7-31(3)(A)(2)(a)(b)(c)(d) and (B), were chosen as the predicate for a cease and desist complaint. This complaint was drawn by the agency staff member who investigated the matter and was submitted to the Chief Inspector who determined, pursuant to Toledo Municipal Code 26-7-32(3)(A), that reasonable cause existed to believe a violation of the Toledo Consumer Sales Practices Act

had occurred. Notice was sent to Bridal Aisle Boutiques and their manager, Irene Burke, and a hearing was conducted pursuant to Toledo Municipal Code 26-7-33(3)(A)(D)(E) and (G).

Counts 4, 5 and 7 of the complaint were dismissed when agency witnesses failed to appear. As to the other counts, the Chief Inspector determined, pursuant to Toledo Municipal Code 26-7-32(I)(2), that the agency had proved by a preponderance of the evidence that violations had occurred. The Chief Inspector signed a cease and desist order which required the two Bridal Aisle Boutiques and Irene Burke to cease and desist from violating Toledo Municipal Code 26-7-10(1)(A)(2), (5), (10); Toledo Municipal Code 26-7-31(3)(A)(2)(a)(b)(e)(f); and Toledo Municipal Code 26-7-31(3)(A)(2)(a)(b)(c)(d) and (B). Bridal Aisle Boutiques and their manager, Irene Burke, were warned in the order that under Toledo Municipal Code 26-7-90, a violation of the cease and desist order is a misdemeanor of the first degree punishable by up to six months imprisonment or a fine of up to $1,000, or both, each day of violation amounting to a separate offense.

Pursuant to R. C. Chapter 2506, Bridal Aisle Boutiques and Irene Burke appealed the issuance of the cease and desist order to the Lucas County Common Pleas Court. The matter was submitted to the court upon the transcript of the agency proceedings and the briefs of the parties, and the court held as follows:

"Upon consideration thereof, the court finds that said decision is not unlawful, unreasonable, or against the manifest weight of the evidence and should be affirmed.

"It is a specific finding of this court that the appellant did not comply with the Rule on Deposits in addition to other particular sections of the Toledo Consumer Sales Practice Act."

From that judgment, Bridal Aisle Boutiques and Irene Burke appealed to this court and filed the following assignments of error:

"1. The Trial Court erred in finding from the Record and holding that the Order of the Toledo Consumer Protection Agency and the decision of the Chief Inspector was not unlawful, unreasonable or against the manifest weight of the evidence and in affirming same.

"2. The decision of the Court is contrary to law in find-

ing with respect to the four-count order below that the appellant did not comply with the Rule on Deposits in addition to other sections of the Toledo Consumer Sales Protection Act.

"3. The decision and judgment of the Court is contrary to law in failing to find that the proceedings of the Chief Inspector and Agency under the City Ordinance and rules violated the rights of these appellants to due process of law and equal protection under the law."

Coming first to the third assignment of error, we find that such is well taken. The practice and procedure of the Toledo Consumer Protection Agency, acting pursuant to the Toledo Consumer Sales Practices Act, violated appellants' rights to due process of law.[2]

Toledo's Consumer Protection Ordinance is modeled upon R. C. 1345.01 through 1345.13. However, under the statutes the Director of Commerce is the investigative arm. R. C. 1345.06 enables the Director, upon finding probable cause, to refer a matter to the Attorney General of Ohio for further proceedings.[3] The Attorney General may bring an action in a court of law. Under R. C. 1345.09, a consumer may pursue his own cause of action for damages resulting from deceptive or unconscionable practices.

Under the Toledo ordinance, in what is primarily an adversary matter between the consumer and the supplier, the Chief Inspector investigates or supervises the investigation, finds probable cause, issues the cease and desist complaint, holds the hearing and rules on the admissibility and weight of the evidence, and issues a cease and desist order based on a preponderance of the evidence. A violation of the cease and desist order is subject to criminal penalties.

It is an elementary principle, even in sand-lot competition, that the umpire cannot take a turn at bat and call his own strikes and balls. Nevertheless, courts have permitted,

---

[2] Appellants' third assignment of error appears to contend that these procedures also violated equal protection but appellants' brief does not contain any argument addressed to the equal protection claim and we therefore do not consider the equal protection claim aspect of the third assignment of error. See App. R. 12(A).

[3] The statute, unlike the Toledo ordinance, only provides for civil enforcement or a private suit for damages. The statute does not provide for a criminal penalty.

under the label of administrative law, an invasion of due process which would never be sanctioned in a court of law. Compare *Withrow* v. *Larkin* (1975), 421 U.S. 35, with *Ward* v. *Village of Monroeville* (1972), 409 U.S. 57. *Ward* involved the constitutionality of statutory procedure which authorized mayors to sit as judges in certain cases. The Supreme Court stated, at page 60:

"This, too, is a 'situation in which an official perforce occupies two practically and seriously inconsistent positions, one partisan and the other judicial, [and] necessarily involves a lack of due process of law in the trial of defendants charged with crimes before him.'"

The court in that case held that the statutory provision, R. C. 2937.20 (providing for the disqualification of interested, biased or prejudiced judges), was not a sufficient safeguard, stating:

"If this means that an accused must show special prejudice in his particular case, the statute requires too much and protects too little." *Ward, supra,* at page 61.

The court further held that it is of no constitutional relevance that the petitioner could later be tried *de novo* in another court, as he was entitled to an impartial judge in the first instance. Even though the Mayor of Monroeville did not have a personal pecuniary interest in fines collected, his alleged interest in a balanced budget was held sufficient to make his impartiality suspect. Yet in *Withrow* v. *Larkin, supra,* a case involving administrative procedures, the court held that the combination of investigative and adjudicative functions without more does not constitute a due process violation. See, also, 2 Davis, Administrative Law Treatise 175, Section 13.02 (1958).

While the cases sanctioning a combination of investigatory and adjudicatory powers within the same agency are legion, where the same person may exercise both powers, as in the Toledo Consumer Protection Agency, courts which have not considered this a due process violation have exercised close scrutiny of agency action and authority to insure that fundamental rights of the parties are protected. *State, ex rel. Ging,* v. *Bd. of Education* (1942), 213 Minn. 550, 7 N.W. 2d 544.

There is no reason why the state of Ohio cannot establish

a higher standard for due process than that of the federal judiciary where the issue is one solely of state concern. See Section 16, Article I, Ohio Constitution. Even though *Withrow, supra,* held that the combination of investigatory and adjudicatory functions within the same agency does not, alone, constitute a due process violation, nonetheless, that same decision also reaffirmed the power of a court cognizant of local realities to determine.on the basis of special facts and circumstances present in the case before it that the combination of functions gives rise to an intolerably high risk of unfairness. We hold that this is such a case wherein the procedure utilized contained a constitutionally unacceptable risk of bias.

To avoid the evil condemned in *Wong Yang Sung* v. *McGrath* (1950), 339 U.S. 33, of commingling in one person the duties of prosecutor and judge,[4] the Federal Administrative Procedure Act was enacted. Ohio also has enacted an Administrative Procedure Act, R. C. Chapter 119.; R. C. 119.09 provides for adjudication hearings and the appointment of a referee or examiner to conduct a hearing where special provisions are not provided in other statutes. See, also, Note, 22 Cleve. St. L. Rev. 281, 293.

We have outlined, above, the unlimited scope and authority of the trier of facts. Furthermore, the Toledo Consumer Protection Agency is a new agency and, without attributing any conscious prejudice to its staff, it must be recognized that the agency is obviously concerned with its track record as a protector of consumers before the legislative body that funds it and before the public in general. Thus, there is the potential for the "incentive to convict" condemned in *Ward, supra,* at page 61.

The scope of the powers possessed by the Chief Inspector and the penalties which can be imposed upon a supplier provide further support for our holding that the procedure herein utilized is unconstitutional. Although it did not so happen in the instant case, a cease and desist order could have been issued on the basis of the complaint without the appearance of the supplier. In cases where the initial determina-

---

[4] See, also, *In re Murchison* (1955), 349 U.S. 133, and *In re Lamb* (1973), 34 Ohio App. 2d 85.

tion could become a final order without the intervention of the party concerned or another tribunal, it has been held to be a violation of due process of law to allow the initial decision-maker investigator to finally decide the matter on the basis of subsequent proceedings. Cf. *National Rifle Assn.* v. *United States Postal Service* (D.C. 1976), 407 F. Supp. 88.

Another reason for the separation between investigatory and adjudicatory functions and for the existence of a neutral, detached fact-finder is the problems that arise after a cease and desist order has been issued. Clearly the issuance of the order is based on proof of the allegations in the complaint by a preponderance of the evidence. See Toledo Municipal Code 26-7-32(I).

The penalty for a violation of the administrative order is criminal. It is classified as a first degree misdemeanor carrying a maximum sentence of six months imprisonment and, or, a fine of up to $1,000 for each day of violation.

If the supplier appeals under R. C. Chapter 2506, the Common Pleas Court is not required to try the case *de novo,* (see R. C. 2506.03), or determine that the supplier violated the ordinance beyond a reasonable doubt, but only that from the record the decision is not "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable and probative evidence on the whole record" (see R. C. 2506.04).

If the supplier does not take a Chapter 2506 appeal, but a violation hearing is later held in a court of law to invoke the criminal sanctions, the ordinance is silent as to whether the court determines only if a violation of the cease and desist order occurred or goes beyond that threshold question to determine beyond a reasonable doubt whether or not the defendant violated the ordinance, as the agency ruled by a preponderance of the evidence that it had? See, *e.g.,* 2 American Jurisprudence 2d 321, Administrative Law, Section 515.

It is of interest to note that in the same ordinance relative to "Debt Collection" (Section 26-7-70 and -71), Section 26-7-79 provides for enforcement by trial in the Municipal Court for a second degree misdemeanor where the standard of proof would be beyond a reasonable doubt.

We find, therefore, from the totality of the cir-

cumstances, the substantial penalties which could be imposed, and the doubts which exist as to the scope of review when the violations reach a court of law, that the combination of investigatory and adjudicatory powers within this particular agency deprived Bridal Aisle Boutiques and Irene Burke of their rights to due process.

For the reasons expressed above, the other assignments of error are well taken.

*Judgment reversed.*

BROWN and CONNORS, JJ., concur.