SHERMAN, Appellee,

v.

DAYTON BOARD OF ZONING APPEALS, Appellant.

[Cite as *Sherman v. Dayton Bd. of Zoning Appeals* (1992), 84 Ohio App.3d 223.]

Court of Appeals of Ohio,
Montgomery County.

No. 13291.

Decided Dec. 2, 1992.

David M. Rickert, for appellee.

J. Anthony Sawyer and Steven R. Milby, for appellant.

GRADY, Judge.

The Dayton Board of Zoning Appeals appeals from an order of the trial court reversing an order of the board of zoning appeals, which had denied a permit to modify a building located in a designated historic district of the city.

In 1990, wrought iron security bars were installed on the windows and doors of the Baroque Violin Shop, at 1500 E. Fifth Street, in the St. Anne's Hill historic district in Dayton. In January 1991, a notice of violation was issued to the owner of the shop, indicating that the bars were installed without a certificate of appropriateness, required for all building modifications in that district. The owner of the shop subsequently applied for a certificate of appropriateness. This certificate was denied by the Landmarks Commission, after a hearing held on February 21, 1991, on the basis that such an installation was prohibited by the Blueprint for Rehabilitation.

Robert Sherman, the manager of the shop, appealed this denial to the board of zoning appeals. After a hearing on May 6, 1991, the board of zoning appeals affirmed the decision of the Landmarks Commission, determining that the installation of decorative wrought iron shutters and doors was in violation of the Secretary of the Interior's guidelines and the Blueprint for Rehabilitation.

Pursuant to R.C. 2506.01, the decision of the board was appealed to the court of common pleas, which reversed and ordered that the certificate be issued, holding that the denial of the application was illegal as it was based upon the Landmarks Commission's unconstitutional exercise of power in excess of the powers delegated to it. Appellant, the Dayton Board of Zoning Appeals, has filed a timely notice of appeal.

Although appellant has presented five separate assignments of error, a reading of the decision of the common pleas court reveals that its judgment was based

upon its conclusion that the Blueprint for Rehabilitation ("Blueprint") lacks the force of law and, therefore, that the Landmarks Commission's denial of a permit on the basis of the prohibitions stated in the Blueprint was beyond the authority delegated to it. These issues are the foundation of appellant's first and second assignments of error, which state:

"The court erred in ruling that the resolution of the city commission adopting the Blueprint for Rehabilitation was one of a transient nature, rather than a general or permanent nature which is entitled to be given the force of law.

"The court erred in ruling that the city commission intended the Blueprint for Rehabilitation to be a 'guide to interpreting the ordinance only,' and not legally binding."

The Home Rule Provision, Section 3, Article XVIII of the Ohio Constitution, grants local police power to municipalities. Encompassed within this grant is the authorization for municipalities to adopt zoning regulations. *Hudson v. Albrecht, Inc.* (1984), 9 Ohio St.3d 69, 9 OBR 273, 458 N.E.2d 852. As a municipality, Dayton has the power and authority to adopt zoning regulations governing the construction, modification, and demolition of buildings within the city. Among the purposes the regulations may serve and promote is the preservation of the appearance of historic structures in a condition consistent with their original period and design. *Id.*

■ Zoning regulations of this kind do not exist in a vacuum. Some mechanism of control is usually established, and a city may enact reasonable delegations of authority to its officers and agencies to interpret and apply the regulations. This is generally done, as it was done here, through a permit scheme. Authority to issue or deny a permit to take the steps concerned may be delegated to an agency so long as the agency is given the necessary guidance by the city in how to exercise its discretion.

"It is the function of the legislative body to determine policy and to fix the legal principles which are to govern in given cases. * * * However, it is not possible for the legislature to design a rule to fit every potential circumstance. As such, legislation may be general in nature, and discretion may be given to an administrative body to make subordinate rules, as well as to ascertain the facts to which the legislative policy applies. * * * In order to be valid, however, the legislative enactment must set forth sufficient criteria to guide the administrative body in the exercise of its discretion." *Id.*, 9 Ohio St.3d at 73–74, 9 OBR at 277, 458 N.E.2d at 857.

Dayton R.C.G.O. 150.230 *et seq.* enacts this regulatory scheme. Enforcement is delegated to a Landmarks Commission, which is authorized to grant or withhold certificates to modify historic structures. At R.C.G.O. 150.243(B), the

Landmarks Commission is required to follow the standards of the United States Secretary of the Interior in granting or denying certificates. Those standards are in the form of guidelines published by the Secretary of the Interior.

In furtherance of its charge from the city, the Landmarks Commission adopted the Blueprint, which sets out a number of requirements for the alteration of historic structures. The Blueprint contains specific provisions that are detailed interpretations of the general concepts embodied in the federal standards.

The contents of the Blueprint were approved and adopted by the city by way of a resolution of the city commission, which characterized them as "guidelines."

■ It is undisputed that the structure concerned is within the classification of an historic structure governed by the city's zoning code and regulations for such structures. It is also undisputed that the alteration concerned, the installation of decorative wrought iron bars over doors and windows, is directly prohibited by the Blueprint. The issue is whether the prohibitions embodied in the Blueprint and the denial of a permit on that basis are within the discretion delegated by Dayton to its Landmarks Commission in the zoning code.

The common pleas court found conflict between the federal standards and the restrictions of the Blueprint. However, we can find no material conflict. While the standards of the Secretary of the Interior are expressed in general terms, the standards of the Blueprint are the specific applications of these standards, which the Dayton City Commission has adopted. For instance, the third standard provides that alterations without a historical basis shall be discouraged and the ninth standard provides that compatible, contemporary designs for alterations shall not be discouraged. In contrast, the Blueprint has an absolute prohibition against alterations that involve the installation of exterior iron security bars. This prohibition is not inconsistent with the more general federal standards described above. Rather, it is representative of a determination adopted by Dayton that such bars are not historically accurate or aesthetically pleasing. There is no conflict between the federal standards and the Blueprint concerning the installation of iron security bars. The Blueprint is a consistent, albeit more specific, interpretation of the federal standards which has been adopted by Dayton.

The common pleas court was influenced in its decision by the fact that the federal standards of the Secretary of the Interior which the Landmarks Commission is required to follow are denominated "guidelines" and are stated in terms that are exhortative rather than prohibitive. For example, these standards provide that some actions "should be avoided where possible" or "shall be discouraged." Such terminology is typical of directions stated in permissive terms intended to influence the exercise of discretion. However, the city, in the

exercise of such discretion in R.C.G.O. 150.243(B), has adopted these directions as "standards * * * [which] will govern the decisions of the Landmarks Commission * * * in the issuance of certificates of appropriateness." That form is mandatory, not permissive. As incorporated in the city's ordinances, therefore, the federal standards have the force of law, notwithstanding the permissive character of their original form.

Also of significance to the common pleas court was the fact that the Blueprint was adopted by the city commission by resolution rather than by ordinance. We do not consider that difference to be significant, as the nature and effect of a municipal enactment is determined by its substance, not by its designation or denomination. See *Blanchard v. Bissell* (1860), 11 Ohio St. 96; *State ex rel. Werner v. Koontz* (1950), 153 Ohio St. 325, 41 O.O. 309, 91 N.E.2d 473. The publication by the Landmarks Commission and adoption by the city commission were intended to give notice to interested parties of the specific prohibitions and requirements imposed.

The source of authority for the Landmarks Commission's denial of a permit in this case was the delegation of authority in R.C.G.O. 150.243(B). While the Landmarks Commission relied on the variance from the Blueprint for the denial, the Landmarks Commission nevertheless exercised properly delegated authority. Acting on that delegation, the Landmarks Commission denied the permit as being in conflict with the standards it is required to enforce. Articulation of those same requirements in the Blueprint demonstrates notice and consistency, but is not, as such, the source of the authority exercised; neither is a conflict with the Blueprint the sole grounds for denial, though the proposed modification is prohibited there as well.

We conclude that the Landmarks Commission did not act outside its authority in denying a permit in this case. The decision was an exercise of the discretion delegated to the Landmarks Commission by the Dayton City Commission in R.C.G.O. 150.230 *et seq.*, governing historical districts. Appellant's first and second assignments of error are sustained.

Appellant's third and fourth assignments of error concern similar issues and will be addressed together. These assignments of error state:

"The court erred in ruling that the Blueprint for Rehabilitation prohibition of iron security bars on windows and doors conflicts with R.C.G.O. § 150.243(B), and is therefore invalid.

"The court erred in ruling that the Secretary of the Interior's standards, adopted by the city commission in R.C.G.O. § 150.243(B), supercede [*sic*] the Blueprint for Rehabilitation in the event of a conflict."

Appellant's third and fourth assignments of error argue that the common pleas court erred in holding that the Blueprint conflicts with and is superseded by

R.C.G.O. 150.243(B). As we have found the two standards to be consistent, these assignments of error will also be sustained, on the same analysis as for assignments one and two.

Appellant's fifth assignment of error states:

"The court erred in reversing the decision of the board without first determining whether that decision was unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable and probative evidence on the whole record, insofar as that decision concluded that the iron security bars violated the Secretary of the Interior's guidelines."

■ R.C. Chapter 2506 provides for a review by the common pleas court to determine whether the decision of the board of zoning appeals is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. R.C. 2506.01 and 2506.04. "Although a hearing before the Common Pleas Court pursuant to R.C. 2506.01 is not *de novo*, it often in fact resembles a *de novo* proceeding * * *" because of such provisions as R.C. 2506.03, which indicates that this administrative appeal proceeds as in the trial of a civil action, and which allows for the introduction of new or additional evidence. *Cincinnati Bell, Inc. v. Glendale* (1975), 42 Ohio St.2d 368, 370, 71 O.O.2d 331, 332, 328 N.E.2d 808, 809.

Here, the common pleas court found the decision of the board of zoning appeals to be illegal, as it was based on a standard, the Blueprint for Rehabilitation, which the court found to be unconstitutional. Therefore, the court did not reach the remaining issues, which concern abuse of discretion. Thus, the court made no findings whether the decision of the board was arbitrary, capricious, unreasonable, or unsupported by the preponderance of the evidence.

At the hearing before the board of zoning appeals, evidence was presented on behalf of the Baroque Violin Shop that the installation of iron bars was required for reasons of security and was consistent with relevant architectural standards. The Landmarks Commission disputed this evidence and presented testimony that the modification was in clear violation of those standards. The commission also presented evidence indicating that iron security bars are a safety hazard in the event of a fire. The court did not address these issues.

The issues not addressed by the trial court are within the scope of its review pursuant to R.C. 2506.04. The assignment of error is sustained. The judgment of the trial court is reversed and the cause is remanded for that review.

*Judgment reversed*
*and cause remanded.*

WILSON and WOLFF, JJ., concur.