**CITY OF HUBER HEIGHTS, Appellant,**

v.

**LIAKOS et al., Appellees.**

[Cite as *Huber Hts. v. Liakos* (2001), 145 Ohio App.3d 35.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 18547.

Decided July 13, 2001.

36

38

*Richard A. Talda* and *John C. Chambers*, for appellant.

*H. Louis Sirkin, Laura A. Abrams* and *Jennifer M. Kinsley,* for appellees.

GRADY, Judge.

This is an appeal from a judgment and order of the court of common pleas finding an ordinance enacted by the city of Huber Heights to be unconstitutional.

The ordinance defines a "sexually-oriented business" ("SOB") and requires a person who operates an SOB to obtain a license in order to engage in that business in Huber Heights. The license is issued by the City Manager of Huber Heights upon a written application. If the city manager finds probable cause to deny the license, the applicant may ask for a review of that decision by the city manager, a proceeding in which the applicant bears the burden of proof. If the city manager is not persuaded to issue the license, a temporary license is issued for a limited period or until an appeal taken to the court of common pleas is

finally determined. The applicant may operate the SOB while he holds the temporary license.

The ordinance contains companion provisions that permit the city manager to revoke an SOB license. While any SOB license is outstanding, the licensee must agree to a police search of the public areas of the business premises.

Lucas Liakos and Scott Conrad opened a business in Huber Heights called "Totalxposure." It is undisputed that Totalxposure fits the definition of an SOB in the Huber Heights ordinance. They neither obtained nor sought an SOB license. Huber Heights then commenced this action, alleging a violation of the SOB ordinance. Upon the application of Huber Heights, the trial court entered a temporary restraining order enjoining continued operation of Totalxposure.

Liakos and Conrad moved to quash the TRO and to dismiss the action against them, arguing that the SOB ordinance is unconstitutional. After hearings, the trial court granted the motion. The court held that the ordinance violated the Fourteenth Amendment because it lacks the procedural safeguards that due process requires. The court also found that the inspection provisions of the ordinance created an unreasonable search or seizure for purposes of the Fourth Amendment. The court further concluded that these unconstitutional provisions cannot be severed from the ordinance in order to save it.

Huber Heights filed a timely notice of appeal from the order dismissing its action against Liakos and Conrad. Huber Heights does not contest the trial court's decision concerning searches of a licensee's business, except as to whether the provision of the ordinance that requires a licensee to submit to a search is severable from its other provisions. Because we agree that the ordinance on its face is unconstitutional, requiring its rejection *in toto*, we need not reach that issue.

## First Assignment of Error

"It was error for the trial court to declare the designation of appellant Huber Heights' city manager to review SOB permit applications and to preside over a subsequent evidentiary hearing concerning the same as unconstitutional."

While sexually oriented speech is protected by the First Amendment, a city may adopt content-neutral licensing measures to regulate sexually oriented businesses so long as they are designed to serve a substantial governmental interest. *Barnes v. Glen Theatre* (1991), 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504. However, any licensing scheme aimed at protected speech amounts to a "prior restraint" upon the First Amendment rights of a person. *Id.*

A prior restraint on speech occurs when speech is conditioned upon the prior approval of public officials. *Nightclubs, Inc. v. Paducah* (C.A.6, 2000), 202

F.3d 884, 889, citing *Southeastern Promotions, Ltd. v. Conrad* (1975), 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448. Although prior restraints on speech are not unconstitutional *per se*, they confront a heavy presumption against their validity. *Id.* This presumption flows from the risk of two evils: (1) the risk of censorship associated with the vesting of unbridled discretion in government officials, and (2) the risk of indefinitely suppressing permissible speech when a licensing law fails to provide for the prompt issuance of a license. *Nightclubs, Inc., supra,* at 889, citing *FW/PBS Inc. v. Dallas* (1990), 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603. We address the first risk under the first assignment of error, the potential for suppression of protected speech flowing from an arbitrary and discriminatory enforcement of laws by public officials.

▇▇ There is a strong presumption in favor of the validity of an ordinance. *Downing v. Cook* (1982), 69 Ohio St.2d 149, 151, 23 O.O.3d 186, 187, 431 N.E.2d 995, 997. See, also, *Withrow v. Larkin* (1975), 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712. A party challenging the validity of an ordinance bears the burden of demonstrating its unconstitutionality. *Mayfield–Dorsh, Inc. v. S. Euclid* (1981), 68 Ohio St.2d 156, 22 O.O.3d 388, 429 N.E.2d 159. In order for an enactment to be valid, due process requires that the enactment must set forth sufficient criteria to guide an administrative body charged with enforcement of the ordinance in an exercise of its discretion. *Sherman v. Dayton Bd. of Zoning Appeals* (1992), 84 Ohio App.3d 223, 225, 616 N.E.2d 937, 938, citing *Hudson v. Albrecht, Inc.* (1984), 9 Ohio St.3d 69, 73–74, 9 OBR 273, 277, 458 N.E.2d 852, 857. If it does not, the enactment is impermissibly vague.

▇▇ The due process doctrine of vagueness requires that the terms of an ordinance be clear enough to prevent " 'arbitrary and discriminatory enforcement' " by the body required to administer the law. *Tipp City v. Peachey* (July 14, 2000), Miami App. No. 99CA27, unreported, 2000 WL 966398, quoting *State v. Nipps* (1979), 66 Ohio App.2d 17, 19, 20 O.O.3d 49, 51, 419 N.E.2d 1128, 1131. See, also, *Smith v. Goguen* (1974), 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605. In order to prevent arbitrary and discriminatory enforcement, the ordinance must provide explicit standards to guide those who apply it. *Tipp City,* citing *In re Complaint Against Judge Harper* (1996), 77 Ohio St.3d 211, 673 N.E.2d 1253.

▇▇ An ordinance is impermissibly vague if it delegates basic policy matters to officials for resolution on a subjective basis. *Tipp City.* However, because of the imprecision of language, "we can never expect complete certainty from its use. It will always be true that fertile legal 'imagination can conjure up hypothetical cases in which the meaning of * * * [disputed] terms will be in nice question.' " *Id.,* quoting *Complaint Against Harper, supra.* See, also, *Am.*

*Communications Assn. v. Douds* (1950), 339 U.S. 382, 412, 70 S.Ct. 674, 691, 94 L.Ed. 925, 951.

█ In First Amendment issues, the vagueness doctrine imposes an even more stringent specificity requirement than in other contexts. *Goguen, supra; Grayned v. Rockford* (1972), 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222. The Supreme Court elaborated on the heightened sensitivity to laws that ensnare the freedom of expression, stating:

"A government regulation that allows arbitrary application is 'inherently inconsistent with valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view.' To curtail that risk, 'a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license' must contain 'narrow, objective, and definite standards to guide the licensing authority.' The reasoning is simple: If the permit scheme 'involves the appraisal of facts, the exercise of judgment, and the formation of an opinion' by the licensing authority, 'the danger of censorship and of abridgment of our precious First Amendment freedoms is too great' to be permitted." (Citations omitted.) *Forsyth Cty., Ga. v. Nationalist Movement* (1992), 505 U.S. 123, 130–131, 112 S.Ct. 2395, 2401–2402, 120 L.Ed.2d 101, 110.

█ Arbitrary enforcement of laws in the First Amendment context may chill the exercise of lawful free speech. Where a vague statute " 'abut[s] upon sensitive areas of basic First Amendment freedoms,' 'it operates to inhibit the exercise of [those] freedoms.' Uncertain meanings inevitably lead citizens to ' "steer far wider of the unlawful zone" * * * than if the boundaries of the forbidden areas were clearly marked.' " *Grayned, supra,* 408 U.S. at 109, 92 S.Ct. at 2299, 33 L.Ed.2d at 228, quoting *Baggett v. Bullitt* (1964), 377 U.S. 360, 372, 84 S.Ct. 1316, 1322–1323, 12 L.Ed.2d 377, 385; *Cramp v. Bd. of Pub. Instruction* (1961), 368 U.S. 278, 287, 82 S.Ct. 275, 280–281, 7 L.Ed.2d 285, 292. Therefore, it is with heightened sensitivity and caution that we scrutinize the Huber Heights ordinance.

An application for a SOB license must be made to and approved by the Huber Heights City Manager. Section 10(C) of the ordinance requires the city manager to deny an application if the city manager finds that any of a number of requirements have not been met, and states:

"C. Denial of Application for Permit

"1. The City Manager or his/her designee, shall deny the application for any of the following reasons:

"a. Any applicant is under eighteen years of age.

"b. Any applicant is overdue on his/her payment to the City of taxes, fees, fines, or penalties assessed against him/her or imposed upon him/her in relation to a sexually oriented business.

"c. Any applicant has failed to provide information required by this Section or permit application for the issuance of the permit or has falsely answered a question or request for information on the application form.

"d. Any applicant is in violation of, or is not in compliance with, any of the provisions of this Ordinance.

"e. Granting of the application would violate a court order.

"f. Any applicant has a permit under this Ordinance which has been suspended or revoked during the five (5) year period preceding the application.

"g. Any applicant has been convicted of a 'specified criminal act' for which:

"(1) less than two (2) years have elapsed since the date of conviction, the date of completion of probation, or the date of release from confinement, whichever is the later date, if the conviction is of a misdemeanor offense for the 'specified criminal acts';

"(2) less than five (5) years have elapsed since the date of conviction, the date of completion of probation, or the date of release from confinement, whichever is the later date, if the conviction is of a felony offense, for the 'specified criminal acts';

"(3) less than five (5) years have elapsed since the date of conviction, that date of completion of probation, or the date of release from confinement, whichever is the later date, if the convictions are of two or more misdemeanor offenses arising out of different incidents for 'specified criminal acts' offenses occurring within any twenty-four month period.

"The fact that a conviction is being appealed shall have no effect on disqualification of the applicant.

"An applicant who has been convicted of the above described 'specified criminal acts' may qualify for a sexually oriented business permit only when the time period required above in Section 10(C)(1)(h) has elapsed."

Notably, the foregoing criteria are entirely content-neutral. That is, they do not require or permit the city manager to grant or deny a license on the basis of the city manager's own views concerning the content of an SOB activity. Further, many of its provisions are capable of objective determination, such as whether an applicant is under eighteen years of age, whether an applicant has a criminal record, whether the application would violate a court order, and so forth. However, others are not, and any one of them permits the city manager to deny

an application or revoke a license if the city manager concludes that its terms have been violated.

Section 10(C)(1)(c) of the SOB ordinance requires the city manager to deny an application if the city manager concludes that the applicant "has failed to provide information" required or has "falsely" answered a question or request for information. Paragraph (d) requires denial if the city manager concludes that the applicant has violated or failed to comply with the requirements of the ordinance. While these sections refer to other matters, they permit the city manager to arrive at conclusions concerning them that are wholly subjective, conclusions based on the city manager's individual view of what is sufficient or insufficient, what is true and what is false, and what other violations or compliance failures may exist.

The SOB ordinance purports to require license applicants merely to provide information, a feature common to licensing schemes of all kinds. However, instead of requiring information which is deemed sufficient on its face, or some proof of facts the sufficiency of which is subject to objective determination, the decision whether to issue the license depends on the city manager's individual, subjective view concerning the adequacy and completeness of the information submitted. The city manager is an employee and chief executive officer of the city of Huber Heights. One cannot ignore the potential for pressure on the city manager to deny an SOB license by deeming an applicant's information insufficient, false, or noncompliant, even when it is not. Such initial determinations, even if capable of reversal, have the real capacity to deter the exercise of First Amendment rights. Applicants who must rent space, buy stock and fixtures, and hire employees will be reluctant to make the investments of time and money required when the necessary license is subject to the city manager's subjective judgments.

The potential for arbitrariness is further exacerbated by the fact that the ordinance also fails to provide for a neutral, independent decision-maker to review the city manager's initial determination. Section 31(A) of the Huber Heights SOB ordinance provides for the hearing process:

"Within ten (10) days of receipt of such notice [of probable denial of the application], the respondent may provide to the City Manager in writing a response which shall include a statement of reasons why the permit should not be denied, suspended or revoked. Within ten (10) days of the receipt of such written response, the City Manager shall conduct a hearing at which respondent shall have the opportunity to present evidence and witnesses on his or her behalf. The City Manager shall notify the respondent in writing of the hearing date within three (3) days of the receipt of such written response."

The trial court found that the dual role played by the Huber Heights City Manager—as both the initial reviewer of the SOB permit application and the authority presiding over the subsequent hearing regarding a denial of the application—rendered the Huber Heights SOB ordinance constitutionally flawed. On appeal, Huber Heights argues that combining administrative and adjudicatory roles in the same person is not *per se* impermissible. Huber Heights cites *Withrow v. Larkin, supra,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712, for this proposition.

In *Withrow,* the court found no defect in a procedure that allowed a state licensing board both to investigate a physician and preside over a subsequent hearing regarding suspension of a physician's license. The *Withrow* court went so far as to note that "[t]he case law, both federal and state, generally rejects the idea that the combination [of] judging [and] investigating functions is a denial of due process." *Id.* at 52, 95 S.Ct. at 1467, 43 L.Ed.2d at 726.

However, just three years before *Withrow,* the Supreme Court recognized that it is not constitutionally acceptable to allow a hearing procedure in which the factfinder has an "incentive to convict." *Ward v. Monroeville* (1972), 409 U.S. 57, 61, 93 S.Ct. 80, 84, 34 L.Ed.2d 267, 271. In *Ward,* the court found that a statute that authorized mayors to sit as judges in certain cases was a denial of due process because a mayor's interest in collecting fines for the city coffers was sufficient to make his impartiality suspect. *Id.* The court reasoned that it was a denial of due process to allow a "situation in which an official perforce occupies two practically and seriously inconsistent positions, one partisan and the other judicial." *Id.* at 60, 93 S.Ct. at 83, 34 L.Ed.2d at 271.

Subsequent decisions interpreting *Withrow* and *Ward* have distinguished between combining investigative and adjudicative roles in members of the same agency, and combining these roles in the very same person. See *Appeal of Wal–Mart Stores* (2000), 145 N.H. 635, 765 A.2d 168, 171 ("It is axiomatic that a quasi-judicial official cannot both prosecute a case against an interested party and adjudicate that party's rights without casting doubt on his or her impartiality"); *Ross v. Med. Univ. of South Carolina* (1997), 328 S.C. 51, 492 S.E.2d 62; *Matter of Beer Garden, Inc. v. New York State Liquor Auth.* (1992), 79 N.Y.2d 266, 582 N.Y.S.2d 65, 590 N.E.2d 1193; *Pork Motel Corp. v. Kansas Dept. of Health & Environment* (1983), 234 Kan. 374, 673 P.2d 1126.

The Federal Administrative Procedure Act, Section 554(d), Title 5, U.S. Code, specifically prohibits the combination of investigative and adjudicative functions in the same person:

"An employee or agent engaged in the performance of investigative or prosecuting functions for an agency in a case may not, in that or a factually related case, participate or advise in the decision, recommended decision, or agency

review pursuant to section 557 of this title, except as witness or counsel in public proceedings." See, also, *Elliott v. Sec. & Exchange Comm.* (C.A.11, 1994), 36 F.3d 86; *Greenberg v. Bd. of Governors of the Fed. Res. Sys.* (C.A.2, 1992), 968 F.2d 164.

Courts in Ohio have also drawn the distinction between placing investigatory and adjudicatory authority in the same agency and placing that authority in the same person. See *Burke v. Fought* (1978), 64 Ohio App.2d 50, 18 O.O.3d 32, 410 N.E.2d 1255; *Sorin v. Warrensville Hts. Bd. of Edn.* (1974), 39 Ohio Misc. 108, 68 O.O.2d 270, 315 N.E.2d 848.

Ohio has enacted its own Administrative Procedure Act. R.C. 119.09 provides that an agency may appoint a referee or examiner to conduct the hearing. While the statute does not specify who may act as hearing officer, one court interpreting this section found that where the hearing examiner was a staff attorney for the agency, but did not act as an investigator of the permit violations, no due process violation occurred. *Kick v. Dailey* (Oct. 17, 1995), Holmes App. No. CA–528, unreported, 1995 WL 617621.

We are persuaded by the distinction drawn in these cases and statutes between the permitted practice of reposing both investigative and adjudicative authority in an institutional agency and the prohibited practice of permitting a single individual to perform both tasks. The latter version fatally undermines the quality of neutrality that is the central purpose of a review process, especially when, as here, the applicant bears the burden of proof to convince the city manager that he or she was wrong. Accordingly, we find that the combination of investigative and adjudicative functions vested by the ordinance in the Huber Heights City Manager is a form of unbridled discretion.

Further provisions of the ordinance attempt to save it from these flaws. The city manager is required to issue a temporary license if an application for an SOB license is denied, and an applicant may operate under the temporary license until a court to which the applicant has appealed the city manager's decision reverses it. This would appear to avoid the "prior restraint" problem. In our view, it does not.

Applicants who must lease a business location, buy fixtures and stock, and perhaps hire employees will be reluctant to expend the time and money required while the city manager's denial of their application remains pending. The review by the city manager of his or her own prior decision offers little or nothing in the way of relief. A court review, even if one is available, may take many months. All of this chills the exercise of the First Amendment right by discouraging its exercise.

■ In sum, we find that the city manager's initial review and investigation of an SOB application lacks the precise guidance necessary to satisfy due process concerns, especially where the First Amendment is implicated. Furthermore, we agree with the trial court's determination that the SOB ordinance procedure unconstitutionally combines administrative and judicial roles in the Huber Heights City Manager, which exacerbates the potential for arbitrary enforcement. In turn, these create a prior restraint on the exercise of the right. Therefore, we find the procedures set forth in Huber Heights SOB ordinance unconstitutional.

The first assignment of error is overruled.

### Second Assignment of Error

"It was error for the trial court to declare as unconstitutional the 2000 SOB ordinance and R.C. [Chapter] 2506 as applicable to appeals from appellant Huber Heights' 2000 SOB ordinance."

To begin, Huber Heights alleges that the trial court found R.C. Chapter 2506 unconstitutional. However, a review of the trial court's decision reveals that the trial court found the Huber Heights SOB ordinance unconstitutional because it did not allow for R.C. Chapter 2506 review by a court of common pleas, not that R.C. Chapter 2506 is itself unconstitutional. The trial court also found that, even if the city manager's review constitutes a quasi-judicial proceeding, R.C. Chapter 2506 fails to provide prompt judicial review, which is also necessary for the Huber Heights SOB ordinance to pass muster. It is this issue that Huber Heights addresses under this assignment of error.

However, Huber Heights' argument under this assignment is moot based upon our determination under the first assignment of error that the Huber Heights SOB ordinance is unconstitutionally vague, which exposes the distinct potential for arbitrary enforcement of the ordinance.

Accordingly, the second assignment of error is overruled.

### Third Assignment of Error

"It was error for the trial court to hold that the inspection rights given to appellant Huber Heights in the 2000 SOB ordinance constitutes a violation of the Fourth Amendment of the Ohio [*sic*] Constitution."

Section 12 of the Huber Heights SOB ordinance contains a provision that requires a permit holder to consent to inspections performed by various city services at any time they are open for business:

"An applicant or permittee shall permit representatives of the Division of Police, Division of Planning and Development, the county health department, and

the Division of Fire to inspect the premises of a sexually oriented business for the purpose of assuring compliance with the law, at any time it is open for business. All inspections of the premises of a sexually oriented business as provided for herein shall be limited to areas open to the public unless a search warrant has been obtained to examine additional areas."

The trial court found that the inspections authorized by Section 12 violated the reasonableness requirement of the Fourth Amendment. The trial court emphasized that an adult-oriented business may not be singled out for special regulation unless the city can prove that the regulation furthers a substantial and legitimate state interest unrelated to the suppression of protected expression.

 The Fourth Amendment to the Constitution of the United States protects against unreasonable searches and seizures. The reasonableness of a search depends on the totality of the circumstances in each case. *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489.

 "Administrative searches are 'significant intrusions upon the interests protected by the Fourth Amendment,' and generally require that a government official possess 'a suitably restricted search warrant.'" *J.L. Spoons, Inc. v. Brunswick* (N.D.Ohio 1999), 49 F.Supp.2d 1032, quoting *Camara v. Mun. Court of the City & Cty. of San Francisco* (1967), 387 U.S. 523, 534, 87 S.Ct. 1727, 18 L.Ed.2d 930.

 Although there is a narrow exception to the warrant requirement for administrative searches of "closely regulated" industries such as mining, firearms, and vehicle dismantling, sexually oriented businesses do not qualify as closely regulated industries. *J.L. Spoons, Inc., supra,* 49 F.Supp.2d at 1040, citing *New York v. Burger* (1987), 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601. Indeed, because sexually oriented businesses enjoy a degree of First Amendment protection, the government probably could not closely regulate them without running afoul of the First Amendment. *J.L. Spoons* at 1040

In *J.L. Spoons,* the district court struck down a provision of a SOB ordinance that authorized police, health, fire, zoning, and other city departments to inspect sexually oriented businesses to ensure compliance with the law. The inspection requirement in *J.L. Spoons* is remarkably similar to the section at issue here. Inasmuch as the administrative search authorized by Section 12 of the Huber Heights SOB ordinance improperly authorizes warrantless searches, the trial court found the section unconstitutional.

Huber Heights urges that searches of the public areas of an SOB during regular hours are nevertheless reasonable intrusions because these areas are open to the public, and therefore the reasonable expectation of privacy is diminished. Huber Heights cites *State ex rel. Rear Door Bookstore v. Tenth*

*Dist. Court of Appeals* (1992), 63 Ohio St.3d 354, 588 N.E.2d 116, to support this proposition.

In *Rear Door,* undercover officers from the county sheriff's department entered the store to retrieve evidence pursuant to a criminal investigation. The Ohio Supreme Court found that, because the undercover deputies entered a part of the business open to the public, a search in the constitutional sense did not occur. The decision cited *Maryland v. Macon* (1985), 472 U.S. 463, 105 S.Ct. 2778, 86 L.Ed.2d 370 (the undercover purchase of allegedly obscene magazines is not a search and seizure), for this proposition.

Here, the ordinance requires a licensee, as a condition to the license, to consent in advance to searches of the public portions of the premises by a number of different city officials, including police. One can easily see how these unlimited searches could be used to harass both permit holders and patrons and thereby obstruct the lawful conduct of the business. Huber Heights cannot require a permit applicant to consent in advance to an unlimited number of warrantless searches as a condition to the exercise of First Amendment rights.

Adult bookstores are, of course, subject to the same lawful health and safety regulations of the municipal code that are applicable to other business establishments. *Genusa v. Peoria* (C.A.7, 1980), 619 F.2d 1203. We do not forbid a police officer to enter an adult bookstore in Huber Heights without a search warrant. However, we agree that requiring a permit applicant to consent in advance to unlimited searches of his establishment is unreasonable under the Fourth Amendment.

Therefore, we find that Section 12 of the ordinance impinges on the First and Fourth Amendment rights of an owner of a sexually oriented business.

Accordingly, the third assignment of error is overruled.

### Fourth Assignment of Error

"It was error for the court not to sever from the 2000 SOB ordinance those provisions which it deemed unconstitutional."

Ohio employs a three-part test to assess whether the unconstitutional portions of an ordinance may be severed from the remainder of the ordinance:

" '(1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect

to the former only?'" *State v. Hochhausler* (1996), 76 Ohio St.3d 455, 464–465, 668 N.E.2d 457, 466–467, quoting *Geiger v. Geiger* (1927), 117 Ohio St. 451, 466, 160 N.E. 28, 33.

The trial court determined that, because the Huber Heights SOB permit scheme violates the Fourth and Fourteenth Amendments, and the "special use" provisions of the Huber Heights Zoning Ordinance are overbroad, severance of these provisions was not proper because it would have fundamentally disrupted the statutory scheme.

Huber Heights does not quarrel with the trial court's findings regarding the "special use" provisions of the zoning ordinance on appeal. However, Huber Heights does argue that if we find that the inspection requirement of Section 12 of the Huber Heights SOB ordinance is unconstitutional, which we did under assignment three, then this provision could be severed from the remaining ordinance.

While the unconstitutional inspection provision of the ordinance may have been capable of severance, this argument is moot in light of our finding concerning the application and the procedure available under the Huber Heights SOB ordinance. Therefore, because the due process rights of an applicant are impermissibly violated, the entire ordinance is flawed and severance is impossible.

The fourth assignment of error is overruled.

## Fifth Assignment of Error

"It was error for the trial court to grant appellee Totalxposure's motion to dismiss as appellee Totalxposure failed to meet [its] burdens of proof and persuasion."

Huber Heights argues that the trial court failed to hold Totalxposure to the correct burdens of proof when it granted the motion to dismiss.

Totalxposure challenged the constitutionality of the ordinance as a defense in an action instituted by Huber Heights. Totalxposure bore the burden merely of proving that the ordinance was unconstitutional in that it violated the First, Fourth, and Fourteenth Amendments. We find that the trial court held Totalxposure to the proper burdens.

Therefore, the fifth assignment of error is overruled.

## Sixth Assignment of Error

"It was error for this court not to give notice to or order the inclusion of the Ohio Attorney General as a party to this action as required before declaring the 2000 SOB ordinance and/or R.C. [Chapter] 2506 unconstitutional."

Huber Heights argues that the trial court erred by failing to include the Attorney General as a party. This argument fails for a number of reasons.

■ First, as noted above, the trial court did not hold R.C. Chapter 2506 unconstitutional. Second, R.C. 2721.12, which requires that the Attorney General of the state be served with a copy of the proceeding, and requires that she be heard in the matter, is not applicable because the action was not instituted as a request for declaratory judgment. *FRC of Kamms Corner, Inc. v. Cleveland Bd. of Zoning Appeals* (1984), 14 Ohio App.3d 372, 14 OBR 477, 471 N.E.2d 845. In addition, it appears that this argument is waived because Huber Heights did not raise it before the trial court.

In any event, the sixth assignment of error is overruled.

## Conclusion

Having overruled each assignment of error, the judgment from which this appeal is taken will be affirmed.

*Judgment affirmed.*

BROGAN, J., concurs.

FAIN, J., concurs in the judgment.

FAIN, Judge, concurring in the judgment.

I write separately because my reasoning for overruling the first assignment of error differs somewhat. In all other respects, I concur in Judge Grady's well-reasoned opinion.

As the ordinance at issue was explained by the city's attorney during oral argument, it calls for the Huber Heights City Manager to wear up to three hats during the SOB licensing process. First, the city manager performs the ministerial task of determining whether the application is sufficient on its face. In my view, this is ministerial because the questions on the face of the application call for specific, objective facts that will either satisfy, or not satisfy, the requirements of the ordinance. No discretion is extended to the city manager in the review of the application on its face.

If the city manager finds that the SOB application, on its face, satisfies the requirements of the ordinance, the city manager then has discretion whether to grant the permit, or cause an investigation to be made. If the city manager exercises the discretion to cause an investigation to be made, he then becomes involved in an investigative function, either by conducting the investigation himself, or by directing other officers to do so. As a result of that investigation,

the city manager may be satisfied that the information in the application, which is sufficient on its face, is correct, and proceed to issue the permit. Or the city manager may determine that the applicant has either withheld information, or has answered one or more questions falsely, which is a ground for denying the permit, pursuant to Section 10(C)(1)(c) of the ordinance.

If, after performing his investigative role, the city manager decides that there is reason to doubt the accuracy or completeness of the information in the application, the city manager then issues a show cause determination, and the applicant can request a hearing. At the ensuing hearing, the city manager wears his third hat: the adjudicator of disputed facts.

Although I agree that combining the investigative and adjudicatory functions in one person is not ideal, I would not find that this combination, by itself, rises to the level of a First Amendment violation. What troubles me is the absolute discretion vested in the city manager to decide whether to investigate—in other words, to look behind the face of the application. This unfettered discretion permits the city manager to exempt from any further inquiry the facially adequate application of an applicant whose speech is pleasing, or at least not irritating, to the city manager, while subjecting a facially adequate application of an applicant whose speech the city manager finds annoying to an investigation followed by a hearing at which the annoying applicant is put to the trouble of proving the facts set forth in the application.

For me, it is the existence in the ordinance of unregulated discretion—the discretion to decide which facially adequate applications will be approved without any further inquiry, and which facially adequate applications will be subjected to investigation and the requirement of proof at a hearing—that offends the First Amendment, because it gives the officer exercising that discretion, the city manager, too much of an opportunity to base the exercise of that discretion upon the content of the applicant's speech.

If all applications were to be reviewed solely, and ministerially, to see whether they satisfy the ordinance on their face, or if all applicants were required to prove the necessary facts at a hearing, I would not have a problem with this part of the ordinance. It is the city manager's unfettered discretion to determine which applicants will find their facially adequate applications approved without any further inquiry, and which will find themselves required to prove, at a hearing, the facts set forth in their applications, that I conclude offends the First Amendment.

With respect to the other assignments of error, I concur fully in the reasoning expressed in Judge Grady's opinion.