City of Oakwood, Appellee, *v.* Gummer, Appellant.

(No. 73-679—Decided May 15, 1974.)

*Messrs. Gould, Bailey, Farquhar & Green* and *Mr. James R. Gould*, for appellee.

*Messrs. Turner, Granzow, Spayd & Hollenkamp* and *Mr. Wayne H. Dawson*, for appellant.

CORRIGAN, J.  Appellant, in this appeal, maintains that Section 311.02 of the Oakwood ordinances constitutes an unconstitutional prior restraint upon the right of freedom of expression and assembly, for the reason that the ordinance grants the licensing authority overly broad discretion in granting or cancelling parade permits, lacks narrow, objective and definite standards for the issuance of parade permits, and contains unconstitutionally vague definitions of the nature of the prohibited offenses.  As to appellant's contention that the ordinance grants overly broad discretion to the licensing authority, and to that extent imposes an unconstitutional prior restraint upon the protected freedom of expression and assembly, we agree.

I.

At the outset, the appellee argues that appellant does not have standing to challenge the constitutionality of the ordinance because appellant failed to apply for a permit and because the use and obstruction of public streets for a private birthday celebration does not constitute a protected First Amendment freedom.

In *Freedman* v. *Maryland* (1965), 380 U. S. 51, the United States Supreme Court had before it a Maryland motion picture censorship statute requiring submission of all films to a censorship board prior to licensing.  The appellant attacked the constitutionality of the entire statute as a prior restraint, and the Court of Appeals of Maryland held that appellant's challenge was limited only to that section of the statute requiring submission of films to the censorship board, since appellant was convicted of refusing to do so.

In the majority opinion, reversing the Court of Appeals, Mr. Justice Brennan summarized the Supreme Court's position on the question of standing in freedom of

expression cases involving licensing statutes, stating, at page 56:

"In the area of freedom of expression it is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not his conduct could be proscribed by a properly drawn statute, and whether or not he applied for a license. 'One who might have had a license for the asking may . . . call into question the whole scheme of licensing when he is prosecuted for failure to procure it.' *Thornhill* v. *Alabama*, 310 U. S. 88, 97; see *Staub* v. *City of Baxley*, 355 U. S. 313, 319; *Saia* v. *New York*, 334 U. S. 558; *Thomas* v. *Collins*, 323 U. S. 516; *Hague* v. *CIO*, 307 U. S. 496; *Lovell* v. *City of Griffin*, 303 U. S. 444, 452-453. Standing is recognized in such cases because of the '. . . danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application.' *NAACP* v. *Button*, 371 U. S. 415, 433; see also Amsterdam, Note, The Void-for-Vagueness Doctrine in the Supreme Court, 109 U. Pa. L. Rev. 67, 75-76, 80-81, 96-104 (1960). * * *''

In two more recent decisions, affecting standing and overbreadth, *Gooding* v. *Wilson* (1972), 405 U. S. 518, and *Lewis* v. *New Orleans*, No. 72-6156 (February 20, 1974), 42 L. W. 4241, the United States Supreme Court followed the *Freedman* v. *Maryland* holding. Both cases involved constitutional challenges to statutes prohibiting the use to another of opprobrious words or abusive language, tending to cause a breach of the peace. In each case, which involved appellants' standing to challenge the statutes, the court held that the language in the statutes was unconstitutionally vague and overly broad. In so doing, the court, in *Gooding*, stated, at page 520:

"* * * It matters not that the words appellee used might have been constitutionally prohibited under a narrowly and precisely drawn statute. At least when statutes regulate or proscribe speech and when 'no readily apparent construction suggests itself as a vehicle for rehabilitating the statutes in a single prosecution,' *Dombrowski* v. *Pfister*,

380 U. S. 479, 491 (1965), the transcendent value to all society of constitutionally protected expression is deemed to justify allowing 'attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity,' *id.*, at 486; see also *Baggett* v. *Bullitt*, 377 U. S. 360, 366 (1964); *Coates* v. *City of Cincinnati*, 402 U. S. 611, 616 (1971); *id.*, at 619-620 (White, J., dissenting); *United States* v. *Raines*, 362 U. S. 17, 21-22 (1960); *NAACP* v. *Button*, 371 U. S. 415, 433 (1963). This is deemed necessary because persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions provided by a statute susceptible of application to protected expression.

" 'Although a statute may be neither vague, overbroad, nor otherwise invalid as applied to the conduct charged against a particular defendant, he is permitted to raise its vagueness or unconstitutional overbreadth as applied to others. And if the law is found deficient in one of these respects, it may not be applied to him either, until and unless a satisfactory limiting construction is placed on the statute. The statute, in effect, is stricken down on its face. This result is deemed justified since the otherwise continued existence of the statute in unnarrowed form would tend to suppress constitutionally protected rights.' *Coates* v. *City of Cincinnati, supra,* at 619-620 (opinion of White, J.) (citation omitted)."

Reading those decisions in light of the Supreme Court's prior decisions in *Cox* v. *New Hampshire* (1941), 312 U. S. 569, *Kunz* v. *New York* (1951), 340 U. S. 290, and *Poulos* v. *New Hampshire* (1953), 345 U. S. 395, wherein the court proceeded to examine the challenged constitutionality of licensing ordinances even though no license had been sought, as in *Cox*, and no constitutional rights were found to have been contravened under the limiting construction the New Hampshire Supreme Court placed upon the ordinance challenged in *Cox*, we must hold that appellant, in the present case, had standing to challenge the constitutionality of the

Oakwood city ordinance, even though appellant's conduct does not appear to be protected under the First Amendment to the United States Constitution. Nor does it appear to be the subject of arbitrary suppression under that portion of Section 311.02 of the Oakwood ordinances regulating the movement of traffic and allocating police and fire protection throughout the city.

## II.

Our attention, however, is directed to that portion of the third paragraph of Section 311.02, which we find to be objectionable:

"The permit may be refused or cancelled if the resultant conditions would * * * be reasonably likely to provoke disorderly conduct or create a disturbance."

Clearly, the regulation and use of streets and highways for parades and processions is a traditional exercise of control by local government, and the authority of a municipality to impose regulations in order to assure the safety and convenience of its citizens in the use of public highways has never been regarded as inconsistent with civil liberties but rather as one of the means of safeguarding public order upon which they ultimately depend. *Cox* v. *New Hampshire, supra* (312 U. S. 569).

Where, however, licensing ordinances vest in an administrative official discretion to grant or withhold a permit upon broad criteria unrelated to proper regulation of public places, the United States Supreme Court has held them invalid. *Shuttlesworth* v. *Birmingham* (1969), 394 U. S. 147; *Cox* v. *Louisiana* (1965), 379 U. S. 536; *Staub* v. *City of Baxley* (1958), 355 U. S. 313; *Kunz* v. *New York, supra* (340 U. S. 290); *Saia* v. *New York* (1948), 334 U. S. 558; *Largent* v. *Texas* (1943), 318 U. S. 418; *Cantwell* v. *Connecticut* (1940), 310 U. S. 296; *Hague* v. *C. I. O.* (1939), 307 U. S. 496; *Lovell* v. *Griffin* (1938), 303 U. S. 444.

In *Staub* v. *City of Baxley*, the Supreme Court stated, at page 322:

"It is settled by a long line of recent decisions of this court that an ordinance which * * * makes the peaceful enjoyment of freedoms which the Constitution guarantees

contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms."

Courts must, therefore, look to the ordinance in order to determine if the discretion vested in the licensing authority is circumscribed by definitive guides or controlling standards reasonably related to the regulation of public streets and highways.

In *Cox* v. *New Hampshire, supra* (312 U. S. 569), the United States Supreme Court approved a construction of a parade licensing statute by the state Supreme Court which limited administrative discretion to a consideration of the time, place and manner of the parade so as to conserve the public convenience.

Section 311.02 of the Oakwood ordinances sets out, in part, criteria for the issuance of a permit based upon determinations as to the time, place and manner of the parade and the resulting effect upon the public convenience. The problem with the Oakwood ordinance arises out of the inclusion of the language in the third paragraph of the ordinance relating to the reasonable likelihood of the parade provoking disorderly conduct or creating a disturbance. This language resembles statutes prohibiting disorderly conduct or conduct tending to create a disturbance or breach of the peace.

What constitutes such conduct is not defined in the ordinance.

In *Cox* v. *Louisiana, supra* (379 U. S. 536), the Supreme Court struck down as unconstitutionally vague in its overly broad scope a Louisiana statute which makes it a criminal offense to congregate with others "with intent to provoke a breach of the peace, or under circumstances such that a breach of the peace may be occasioned." In that case, the Louisiana Supreme Court had defined the term "breach of the peace" as "to agitate, to arouse from a state of repose, to molest, to interrupt, to hinder, to disquiet."

The United States Supreme Court reached the same

conclusion in *Edwards* v. *South Carolina* (1963), 372 U. S. 229, a case involving a common-law crime similarly defined. In so doing, the court based its determination as to the overly broad scope of the statutes in question upon the rationale expressed in *Terminiello* v. *Chicago* (1948), 337 U. S. 1, 4, that:

"* * * a function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech, though not absolute, *Chaplinsky* v. *New Hampshire, supra*, pp. 571-572, is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest. See *Bridges* v. *California*, 314 U. S. 252, 262; *Craig* v. *Harney*, 331 U. S. 367. There is no room under our Constitution for a more restrictive view. * * *"

In the present case, Section 311.02 of the Oakwood ordinances does not define disorderly conduct, other than to allow denial of a permit upon the city manager's estimation as to the reasonable likelihood that the parade for which a permit is sought will provoke disorderly conduct or create a disturbance.

Clearly, the city manager's discretion is not limited to the regulation of streets and highways in the interest of public safety and convenience but embraces the power to prohibit even protected expression.

For this reason, we hold that Section 311.02 of the Oakwood ordinances delegates overly broad discretion to those charged with the administration of the licensing system and imposes an unconstitutional prior restraint on protected expression in violation of the guarantees of the First and Fourteenth Amendments to the United States Constitution.

The judgment of the Court of Appeals is, therefore, reversed.

*Judgment reversed.*

O'Neill, C. J., Stern, Celebrezze, W. Brown and P. Brown, JJ., concur.

Herbert, J., dissenting. The majority finds this ordinance to be unconstitutional because "the city manager's discretion is not limited to the regulation of streets and highways in the interest of public safety and convenience." In my opinion, all that need be done to save this ordinance and affirm the judgment below is to judicially interpret the enactment in a fashion which eliminates the above-stated objectionable feature.

The United States Supreme Court has left no doubt that ordinances throughout this country which were enacted prior to comparatively recent constitutional pronouncements may be rescued by judicial interpretation. That is, if an ordinance or statute before a court is capable of reaching beyond punishable conduct and punishing acts which may not constitutionally be forbidden, the court should circumscribe the operation of the ordinance to apply only to behavior which may be proscribed.[2] If a law is so drafted that it cannot practically be saved by such judicial construction, then it must be struck down. However, the ordinance now before us is not such an enactment.

By the simple process of limiting the application of this ordinance, including the exercise of discretion by city authorities and the meaning of "disorderly conduct" and "disturbance," to the "regulation of streets and highways in the interest of public safety," we would adhere to our duty to avoid unnecessary declarations of unconstitutionality and unwarranted reversals of trial and lower appellate court judgments.

---

[2]Personally, I have long had some difficulty with this path taken by the high court. In Ohio, for example, there was a time when all of the state criminal conduct law was found in our criminal code. Now, many of our criminal statutes must be read in conjunction with court decisions in order to determine just what conduct is being prohibited.