CITY OF CINCINNATI, Appellant,

v.

JENKINS, Appellee.

[Cite as *Cincinnati v. Jenkins* (2001), 146 Ohio App.3d 27.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–000732, C–000733 and C–000734.

Decided Sept. 21, 2001.

28

*Fay D. Dupuis,* City Solicitor, *Terrence R. Cosgrove,* City Prosecutor, and *Melanie J. Reising,* Senior Assistant City Prosecutor, for appellant.

*Sirkin, Pinales, Mezibov & Schwartz, LLP, H. Louis Sirkin, Laura A. Abrams* and *Jennifer A. Kinsley,* for appellee.

*David R. Langdon,* for *amicus curiae* Citizens for Community Values.

*Bruce A. Taylor,* for *amicus curiae* National Law Center for Children and Families.

---

Doan, Presiding Judge.

Defendant-appellant Shawn Jenkins was charged with operating a sexually-oriented business in the city of Cincinnati without a sexually-oriented-business license, in violation of Cincinnati Municipal Code 899–5(A), and with two counts of being an employee of a sexually-oriented business without a license, in violation of

Cincinnati Municipal Code 899–5(B), all misdemeanors of the first degree. After pleading not guilty, Jenkins filed a motion to dismiss all charges, which the trial court denied. Jenkins then filed a "motion for reconsideration" of his motion to dismiss the charges. The trial court granted the "motion for reconsideration" and dismissed the charges, holding that the ordinance under which Jenkins was charged was unconstitutional.

The city of Cincinnati has appealed, raising one assignment of error, which alleges that the trial court erred in dismissing the charges against Jenkins.

■ The free-speech guarantees under the Ohio Constitution are no broader than those accorded by the First Amendment. See *Eastwood Mall, Inc. v. Slanco* (1994), 68 Ohio St.3d 221, 626 N.E.2d 59. "The First Amendment is the proper basis for interpretation of Section 11, Article I, Ohio Constitution, the provision that establishes those free speech guarantees in Ohio." *Cleveland v. Trzebuckowski* (1999), 85 Ohio St.3d 524, 709 N.E.2d 1148.

■ Sexually-oriented speech that is not obscene is protected by the First Amendment to the United States Constitution and Section 11, Article I of the Ohio Constitution. See *Barnes v. Glen Theatre* (1991), 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504. A "prior restraint" exists when speech is conditioned on the prior approval of public officials. See *Nightclubs, Inc. v. Paducah* (C.A.6, 2000), 202 F.3d 884. Cities may adopt content-neutral licensing schemes for the regulation of sexually-oriented businesses if they are designed to serve legitimate governmental interests such as controlling the secondary effects of sexually-oriented businesses. See *FW/PBS, Inc. v. Dallas* (1990), 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603; *Barnes v. Glen Theatre, supra*; *East Brooks Books, Inc. v. Memphis* (C.A.6, 1995), 48 F.3d 220. But a licensing scheme that is aimed at protected speech amounts to a prior restraint. See *Barnes v. Glen Theatre, supra*.

"Prior restraints are presumptively invalid because they typically involve 'two evils that will not be tolerated': (1) the risk of censorship associated with the vesting of unbridled discretion in government officials; and (2) 'the risk of indefinitely suppressing permissible speech' when a licensing law fails to provide for the prompt issuance of a license." *Nightclubs, Inc. v. Paducah, supra*, citing *FW/PBS, Inc. v. Dallas, supra*.

■ A prior restraint is unconstitutional if it fails to provide adequate procedural safeguards to prevent speech from being unduly suppressed. See *FW/PBS, Inc. v. Dallas, supra*. The purpose of the procedural safeguards is to ensure that a license is issued or denied within a reasonable time. *Id.* Two procedural safeguards are required. First, the licensor must decide whether to issue the license within a specified and reasonable time period during which the

status quo must be maintained; and, second, the licensing procedure must be subject to prompt judicial review. *Id.;* see *Freedman v. Maryland* (1965), 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649.

Under Cincinnati Municipal Code Chapter 899, owners and employees of sexually-oriented businesses are required to obtain licenses. An owner or employee of a sexually-oriented business must submit an application for a license and a nonrefundable fee to the city treasurer. If the applicant is requesting a license as an employee of a sexually-oriented business, the treasurer must issue a temporary permit that allows the applicant to work while the application process is proceeding. But there is no provision that permits an owner to operate a sexually-oriented business while the owner's application for a license is pending before the treasurer.

The treasurer must issue a license within thirty days of the receipt of an application, unless he finds that the applicant is under the age of eighteen; the applicant or the applicant's spouse is delinquent in paying city taxes, fees, or fines; the applicant has supplied incomplete or false information on the application; the applicant or the applicant's spouse has been convicted of violating Cincinnati Municipal Code Chapter 899 within the past two years; the applicant has not paid the filing fee; the applicant's proposed business location violates the city zoning code; or the applicant has been convicted under R.C. Title 29 within certain time periods. The license must be renewed annually.

If the treasurer "determines that probable grounds exist for denial * * * of a license," the applicant must be notified in writing of the intent to deny the license. The applicant may respond in writing to the proposed denial within ten days. If the applicant responds in writing, the treasurer must conduct a hearing within ten days of the applicant's response. The applicant must be notified in writing of the hearing, at which the applicant has a right to present evidence and witnesses in support of the application. Following the hearing, if the treasurer finds that grounds exist for the denial of the application, then a notice of the "final action" denying the application, along with "conclusions of fact," must be sent to the applicant. If the treasurer has not made a final determination at the end of thirty days, he is required to issue a temporary license that must remain in effect until the later of a final decision on the application, the expiration of any time for appealing the decision, or the entry of a judgment on appeal by a "court of competent jurisdiction."

Cincinnati Municipal Code 899–19 provides that once the treasurer has made a final decision denying a license, the applicant "shall have the right to appeal such action to a court of competent jurisdiction pursuant to Ohio Revised Code Section 2506." If an applicant files such an appeal, the treasurer is required to issue a

temporary license that must remain in effect until the "court of competent jurisdiction" enters its judgment.

The trial court held that Cincinnati Municipal Code Chapter 899 was an unconstitutional prior restraint on protected speech because it failed to provide for prompt judicial review.

Only those administrative decisions resulting from quasi-judicial proceedings may be appealed to the courts pursuant to R.C. Chapter 2506. See *M.J. Kelley Co. v. Cleveland* (1972), 32 Ohio St.2d 150, 61 O.O.2d 394, 290 N.E.2d 562. A quasi-judicial proceeding is one that requires notice and a hearing, and the opportunity for the introduction of evidence. *Id.; Union Title Co. v. State Bd. of Edn.* (1990), 51 Ohio St.3d 189, 555 N.E.2d 931.

"Permitting appeal from a quasi-judicial proceeding is based on the premise that an adjudication has been made by the agency which determines the rights or duties of parties with conflicting interests—in other words, there is a justiciable dispute requiring evaluation and resolution. Implicit in this concept is the exercise of discretion." *Rossford Exempted Village School Dist. v. State Bd. of Edn.* (1989), 45 Ohio St.3d 356, 544 N.E.2d 651.

In *Huber Hts. v. Liakos* (2001), 145 Ohio App.3d 35, 761 N.E.2d 1083, the Second District Court of Appeals examined the Huber Heights sexually-oriented-business licensing ordinance. That ordinance is substantially similar to Cincinnati Municipal Code Chapter 899, except that, in Huber Heights, the city manager, not the city treasurer, makes the decision as to whether to issue a sexually-oriented-business license.

The Huber Heights ordinance provides that an application for a sexually-oriented-business permit must be made to the city manager. The city manager, or his designee, must deny the application if the applicant is under eighteen; owes city taxes, fees, fines or penalties; has failed to supply requested information or has supplied false information on the application; has had a sexually-oriented-business permit revoked or suspended within the last five years; or has been convicted of "specified criminal acts" within certain time periods. The city manager must also deny the application if granting it would violate a court order.

If the city manager determines that grounds exist for the denial of a permit, the applicant is sent a notice of probable denial. The applicant has ten days to provide a written response. Within ten days of the receipt of the written response, the city manager must hold a hearing at which the applicant must be given the opportunity to present evidence and witnesses in his behalf. The city manager then determines whether grounds for denial of the permit exist. When a decision to deny a permit becomes final, the applicant has "the right to appeal such action to a court of competent jurisdiction pursuant to Ohio [Revised] Code

Section 2506." The city manager must issue a temporary permit while the appeal is pending.

The Second Appellate District held that the Huber Heights ordinance is unconstitutional, stating that it "unconstitutionally combines administrative and judicial roles in the Huber Heights City Manager, which exacerbates the potential for arbitrary enforcement." *Id.* The appellate court noted that the trial court had "found that the dual role played by the Huber Heights City Manager—as both the initial reviewer of the [sexually-oriented-business] permit application and the authority presiding over the subsequent hearing regarding a denial of the application—rendered the Huber Heights [sexually-oriented-business] ordinance constitutionally flawed." *Id.* The court also noted that the "quality of neutrality which is the central purpose of a review process" was "fatally undermined" where the city manager had both investigative and adjudicative authority and the applicant bore "the burden of proof to convince the City Manager that he or she was wrong." *Id.*

A hearing before an individual predisposed to deny a license does not fulfill the requirement of fundamental fairness in all judicial and quasi-judicial proceedings. We hold that the hearing before the treasurer of the city of Cincinnati does not provide a meaningful opportunity for the applicant to assert his rights in an unbiased forum, and, therefore, fails to qualify as a quasi-judicial proceeding for purposes of appeal under R.C. Chapter 2506. The treasurer's decision is not appealable pursuant to R.C. Chapter 2506; therefore, Cincinnati Municipal Code Chapter 899 is unconstitutional because it does not provide for prompt judicial review.

The city has cited *Currence v. Cincinnati* (July 13, 2000), S.D.Ohio No. C–1–97–725, unreported, 2000 WL 1357918, in support of its contention that Cincinnati Municipal Code Chapter 899 is not unconstitutional. *Currence* is distinguishable from the instant case because the *Currence* court did not address the issue of whether the hearing before the city treasurer is a quasi-judicial proceeding for purposes of appeal pursuant to R.C. Chapter 2506.

The assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

SUNDERMANN, J., concurs.

PAINTER, J., concurs separately.

PAINTER, Judge, concurring.

I concur in Judge Doan's analysis. The major problem with the ordinance is that there is no right of judicial review at all. Because the treasurer's decision is not appealable under R.C. Chapter 2506, there is no avenue of judicial review available. This is both caused by, and in addition to, the problem of having the same official reviewing his own actions.

The *amicus* parties, apparently conceding the constitutional infirmity, would have us save the ordinance by "interpreting" it to require a different official to review the denial of a license, and, in addition, to require the common pleas court to hear and decide any appeal within ninety days. While the latter might be conceivable, the former would require us not to interpret, but to totally rewrite, the ordinance. It is a leap too far, amounting to judicial legislation, not interpretation. If the ordinance is to be rewritten, it is the role of the legislative body, not the courts.