The STATE of Ohio, Appellee,

v.

DEAN, Appellant.

[Cite as *State v. Dean,* 170 Ohio App.3d 292, 2007-Ohio-91.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–050971.

Decided Jan. 12, 2007.

Julia L. McNeil, Cincinnati Solicitor, Ernest F. McAdams Jr., Cincinnati Prosecuting Attorney, and Jennifer Bishop, Assistant Prosecuting Attorney, for appellee.

Jon R. Sinclair, for appellant.

---

SYLVIA S. HENDON, Judge.

{¶ 1} Defendant-appellant, Gordon Dean, received a citation for improper solicitation in violation of Cincinnati Municipal Code ("C.M.C.") 910–12. Dean filed a motion to dismiss, arguing that C.M.C. 910–12 was unconstitutional. The trial court upheld the constitutionality of the ordinance and found Dean guilty of its violation. Dean has appealed to this court, and in his sole assignment of error he argues that the trial court erred in denying his motion to dismiss due to the unconstitutionality of C.M.C. 910–12.

### C.M.C. 910–12

{¶ 2} C.M.C. 910–12, titled "Improper Solicitation," regulates solicitation in Cincinnati. The statute defines "solicit" and "solicitation" as "mak[ing] any request in person while in a public place, for an immediate grant of money, goods or any other form of gratuity from another person(s), or * * * engag[ing] in such activity on private property." [1]

{¶ 3} But the ordinance makes clear that "the terms 'solicit' and 'solicitation' shall not mean the act of passively standing or sitting with a sign or other indicator that a donation of money, goods or any other form of gratuity is being sought without any vocal request other than a response to inquiry by another person." [2]

{¶ 4} Subdivision (b) of the ordinance lists specific areas in which solicitation is improper: "(1) [i]n any public transportation vehicle or at any bus stop; (2) [w]ithin 20 feet in any direction from an automatic teller machine or entrance to a bank; (3) [f]rom any operator or occupant of a motor vehicle or from any person entering or exiting a motor vehicle; (4) [w]ithin 20 feet of any crosswalk; (5) [f]rom a person standing in line waiting to be admitted to a commercial establishment; or (6) [o]n private property without permission from the owner." [3]

---

1. C.M.C. 910–12(a)(1).

2. Id.

3. C.M.C. 910–12(b)(1) through (6).

Subdivision (c) further regulates when solicitation may occur, providing that "it is unlawful for any person to solicit after sunset or before sunrise." [4]

{¶ 5} C.M.C. 910–12(d) prohibits aggressive solicitation, including "(1) [s]oliciting in a manner that impedes access to or from, or use of a building, vehicle or establishment; (2) [s]oliciting in a manner that would alarm, intimidate, threaten, menace, harass, or coerce a reasonable person; (3) [b]y following behind, ahead or alongside, blocking the path of, or continuing to solicit a person who walks or drives away from the person soliciting or who gives notice or demonstrates verbally or physically that such solicitation is offensive, unwelcome or that the solicitation should cease; (4) [b]y using profane or abusive language or gestures either during the solicitation or following a refusal, or making any statement, gesture or other communication that would cause a reasonable person to be fearful or would be perceived as a threat; or (5) [b]y touching the solicited person without a statement, gesture or other communication that the person being solicited consents to the touching."

{¶ 6} And C.M.C. 910–12(e) makes it unlawful to make false and misleading representations while soliciting a donation. Such representations include "(1) [s]tating that the donation is needed to meet a specific need, when the person soliciting already has sufficient funds to meet that need and does not disclose that fact; (2) [s]tating that the donation is needed to meet a need that does not exist; (3) [s]tating that the person soliciting is from out of town and stranded, or that he or she is homeless when that is not true; (4) [s]tating or representing that the person soliciting is a member of a military service when the person soliciting is neither a present nor a former member of a military service; and (5) [s]tating or representing that the person soliciting suffers from a mental or physical disability or deformity when the person soliciting does not suffer the disability or deformity indicated." Dean has not challenged the constitutionality of prohibiting, or the city's right to restrict, aggressive and misleading solicitation under C.M.C. 910–12(d) and (e).

{¶ 7} Through subdivisions (f) through (i), C.M.C. 910–12 makes it unlawful for any person to solicit without first obtaining a registration from the police department. We discuss these provisions in detail below. And subdivision (j) contains a severability provision, allowing for independent subdivisions of C.M.C. 910–12 to remain valid even if other subdivisions are declared invalid.

{¶ 8} Dean received a citation for violating C.M.C. 910–12 by vocally requesting money from pedestrians within 20 feet of a crosswalk. We first analyze the constitutionality of subdivisions (a) through (e), and we then scrutinize the constitutionality of the registration requirement.

---

4. C.M.C. 910–12(c).

### First Amendment Protection

{¶ 9} The city argues that the solicitation regulated by C.M.C. 910–12 constitutes commercial speech, and, consequently, that it deserves less constitutional protection than other forms of protected speech.

{¶ 10} Commercial speech is speech that "relate[s] solely to the economic interests of the speaker and its audience." [5] It is speech that is entitled to some form of protection from government regulation, although "[t]he Constitution * * * accords a lesser protection to commercial speech than to other constitutionally guaranteed expressions." [6]

{¶ 11} We find no merit in the city's argument that solicitation is entitled to less constitutional protection than other types of protected speech. The United States Supreme Court has clearly determined that solicitation is a form of speech entitled to undiluted First Amendment protection.[7] The court has specifically stated that its " 'cases long have protected speech even though it is in the form of * * * a solicitation to pay or contribute money' " [8] and that "[s]olicitation is a recognized form of speech protected by the First Amendment." [9] In so concluding, the court has recognized the "variety of speech interests" associated with charitable requests for money, namely "communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes." [10]

{¶ 12} Having established that the speech regulated by C.M.C. 910–12 is entitled to undiluted First Amendment protection, we must determine what level of scrutiny to apply when analyzing the ordinance.

{¶ 13} C.M.C. 910–12 regulates speech occurring in public areas, predominantly on the sidewalks of Cincinnati. Such areas are public forums, and in these areas "the rights of the State to limit expressive activity are sharply circumscribed." [11]

---

5. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm. of New York* (1980), 447 U.S. 557, 561, 100 S.Ct. 2343, 65 L.Ed.2d 341.

6. Id. at 561 and 563, 100 S.Ct. 2343, 65 L.Ed.2d 341.

7. See *United States v. Kokinda* (1990), 497 U.S. 720, 110 S.Ct. 3115, 111 L.Ed.2d 571.

8. *Schaumburg v. Citizens for a Better Environment* (1980), 444 U.S. 620, 633, 100 S.Ct. 826, 63 L.Ed.2d 73, quoting *Bates v. State Bar of Arizona* (1977), 433 U.S. 350, 363, 97 S.Ct. 2691, 53 L.Ed.2d 810.

9. *United States v. Kokinda*, 497 U.S. at 725, 110 S.Ct. 3115, 111 L.Ed.2d 571.

10. *Schaumburg v. Citizens for a Better Environment*, 444 U.S. at 632, 100 S.Ct. 826, 63 L.Ed.2d 73.

11. *Perry Ed. Assn. v. Perry Local Educators' Assn.* (1983), 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794.

■■ {¶ 14} In such public forums, a regulation that is content-based may not be enforced unless the government shows that it "is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." [12] Alternatively, regulations that are content-neutral may impose time, place, and manner restrictions, so long as they are "narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." [13]

{¶ 15} We must determine whether C.M.C. 910–12 is content-based or content-neutral.

### C.M.C. 910–12 is Content–Neutral

■■ {¶ 16} To determine whether a regulation is content-neutral, the principal inquiry must focus on "whether the government has adopted a regulation of speech because of disagreement with the message it conveys." [14]

{¶ 17} The city of Cincinnati did not adopt C.M.C. 910–12 because it disagrees with the messages conveyed by solicitation. The ordinance restricts only certain forms of solicitation. Vocal solicitation is still permitted in specific areas and at specific times. And nonvocal solicitation is not prohibited or regulated by the ordinance at all. Because solicitation may still take place, it is clear that the city does not disagree with the messages that solicitation conveys.

{¶ 18} Dean argues that C.M.C. 910–12 is content-based because it prohibits immediate requests for money but permits for-profit transactions, such as the sale of an item. We disagree and note that "[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." [15] Moreover, because C.M.C. 910–12 imposes only time, place, and manner restrictions on the act of solicitation, it is clear that the city does not seek to suppress the messages expressed by solicitors.

{¶ 19} An identical challenge to this ordinance is currently pending in federal court. [16] In an order denying the defendant's motion to dismiss, the District Court for the Southern District of Ohio has concluded that C.M.C. 910–12 is content-neutral. The district court stated that "[i]t might appear on first blush

---

12. Id.

13. Id.

14. *Ward v. Rock Against Racism* (1989), 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661.

15. Id.

16. See *Henry v. Cincinnati* (2005), S.D.Ohio No. C–1–03–509.

that Section 910–12 is content-based because it restricts only one category of speech, vocal requests for 'immediate grant of money, goods or any other form of gratuity' * * * [but] [t]his Court holds that Section 910–12 similarly is content-neutral * * *. Section 910–12 does not impose an absolute ban on solicitation, but rather restricts the time, place and manner of vocal solicitation. Second, taken on its face, the law is not concerned with the message implicitly or expressly communicated by a solicitor's request for money * * *. Third, Section 910–12 is not justified by reference to the content of the speech, but rather by the act of solicitation itself." [17]

{¶ 20} The Seventh Circuit Court of Appeals, in *Gresham v. Peterson*,[18] considered a challenge to an antibegging and aggressive-panhandling ordinance enacted by the city of Indianapolis that is almost identical to the statute presently before this court. The Seventh Circuit noted that it was uncontested by the parties that the Indianapolis ordinance is content-neutral.[19]

{¶ 21} Having concluded that C.M.C. 910–12 is content-neutral, we must now determine whether it survives the appropriate level of scrutiny.

### C.M.C. 910–12 is a Valid Content–Neutral Regulation

{¶ 22} As we have stated, a content-neutral regulation should be upheld if it imposes time, place, and manner restrictions that are narrowly tailored, serve a significant government interest, and leave open alternative channels of communication.

{¶ 23} The city of Cincinnati has identified various interests that are served by C.M.C. 910–12. The city has an interest in ensuring that its citizens feel free to move about on the city's streets and sidewalks without experiencing interference or intimidation. The city has an interest in promoting the public welfare by providing safe and accessible areas of commerce, which in turn "generate the tax revenue necessary to support essential public services and the economic productivity that is required to maintain and improve property within the City of Cincinnati." [20] The city further has an interest in preventing crime and in facilitating "the prosecution of cases of aggressive * * * and improper solicitation." [21]

---

17. Id.

18. *Gresham v. Peterson* (C.A.7, 2000), 225 F.3d 899.

19. See id. at 906.

20. Cincinnati Municipal Ordinance No. 0158–2003.

21. Id.

{¶ 24} We conclude that the city has sufficiently demonstrated that it has significant interests associated with the regulation of solicitation. We recognize the importance of the societal, economic, and political messages being conveyed through solicitation. But the city's significant interest in maintaining its economic vitality is not easily accomplished if its citizens do not feel safe or free to move about the city without being accosted by those requesting money.

{¶ 25} And we further conclude that C.M.C. 910–12 is narrowly tailored to serve these significant interests. A regulation may be narrowly tailored without being the least restrictive or least intrusive means of regulating conduct.[22] C.M.C. 910–12 regulates only vocal solicitation. Solicitors are not prohibited from displaying signs or from employing other nonvocal methods of solicitation. Additionally, solicitation is only regulated in specific areas. Individuals are free to vocally solicit in areas other than those specifically identified.

{¶ 26} Further supporting a determination that C.M.C. 910–12 is narrowly tailored is the fact that in each of the areas in which the city has chosen to prohibit solicitation, the city's significant interests are furthered. The city has ensured the safety of its citizens by prohibiting solicitation at bus stops and on public transportation, within 20 feet of a crosswalk, and from any person occupying, entering, or leaving a motor vehicle. And by prohibiting solicitation within 20 feet of an automatic teller machine and from persons waiting to enter a commercial establishment, the city has served its interests in preventing crime and furthering economic productivity.

{¶ 27} C.M.C. 910–12 also leaves open ample alternative channels of communication. As we have stated, nonvocal solicitation is not prohibited. And vocal solicitation may still occur from sunrise to sunset in areas not specifically identified by the ordinance.

{¶ 28} Because C.M.C. 910–12 is a content-neutral regulation that is narrowly tailored to serve significant government interests, while leaving open alternative channels of communication, we conclude that those portions of the ordinance establishing the content-neutral regulation, specifically subsections (a) through (e), are constitutional.

### Registration Requirement

{¶ 29} As we have noted, C.M.C. 910–12 also requires potential solicitors to obtain a registration before soliciting.

{¶ 30} C.M.C. 910–12(f) provides that "[i]t is unlawful for any person to solicit without possession of a valid registration issued by the police department. Any

---

22. *Ward v. Rock Against Racism*, 491 U.S. at 798, 109 S.Ct. 2746, 105 L.Ed.2d 661.

person who has been registered shall keep a copy of the registration on his or her person at all times while engaging in acts of solicitation and shall show it to any police officer upon request * * *."

{¶ 31} Subsection (f) further provides how a registration is to be issued, stating that "[t]he police chief or his designee shall issue the registration, without fee, to any eligible person who presents himself or herself at the registration location to be designated and operated by the health department, states his or her true name, presents a photo identification or signs a declaration under penalty of perjury that he or she has no such identification, and permits himself or herself to be photographed. The regular registration shall expire one (1) year from the date of issuance."

{¶ 32} An applicant receives a temporary registration upon submitting a request for registration. "Upon receipt of an application for registration that is in accordance with this section, the police department shall issue a temporary registration valid for ten (10) days and shall determine eligibility for a regular registration before the temporary registration expires. An eligible applicant shall receive a regular registration upon determination of the applicant's eligibility. If such determination is not made within the ten-day period, the temporary registration shall remain in effect until such time that the determination is made." [23]

{¶ 33} Subsection (f) further prohibits the making of false or misleading statements on a registration application, and it briefly discusses the penalties for soliciting with no registration. "First-time offenders of the registration requirement will be issued a warning citation by the issuing officer, which will be recorded at the police department, but such first-time offenders will not be charged with a violation of this section. Subsequent violations of the registration requirement will result in a charge of violation of this section." [24]

{¶ 34} C.M.C. 910–12(g) outlines when an applicant may properly be denied a registration. "A person is ineligible to register if, and only if, within the past eighteen (18) months, he or she has (1) been previously convicted of a violation of Section 910–12 of the Cincinnati Municipal Code; or (2) has had a registration revoked pursuant to section (h) of this ordinance; or (3) has been convicted of an offense under the laws of any jurisdiction which involve aggressive or intimidating behavior while engaging in solicitation or false or misleading representation while engaging in solicitation." [25]

---

23. C.M.C. 910–12(f).

24. Id.

25. C.M.C. 910–12(g).

{¶ 35} C.M.C. 910–12(h) provides for the revocation of a previously issued registration. And subsection (i) concerns the appellate process available to an applicant when a registration has been denied or revoked. It provides that "[a]ny applicant shall have the right to appeal the denial or revocation of registration by immediately requesting review by the Office of Administrative Hearings of the City of Cincinnati. The appeal to the Office of Administrative Hearings shall be taken by the applicant or registration holder within ten (10) days after issuance of the notice of denial or revocation by filing written notice of appeal with the police chief * * *. The Office of Administrative Hearings shall consider the appeal within a reasonable time period as set forth within its regulations [and] * * * shall direct that the denial or revocation be rescinded if the applicant has met all of the qualifying criteria set forth in this section. The applicant or registration holder may appeal the decision of the Office of Administrative Hearings to the Court of Common Pleas of Hamilton County pursuant to Chapter 2505 of the Ohio Revised Code." [26]

{¶ 36} Dean argues that the subsections of C.M.C. 910–12 imposing a registration requirement are unconstitutional because they operate as a prior restraint.

### Standing

{¶ 37} The city argues that Dean lacks standing to challenge these provisions concerning registration because he was not cited for failing to possess a registration, but rather was cited for soliciting in a prohibited area. We disagree.

{¶ 38} The Supreme Court of Ohio considered a similar argument in *Oakwood v. Gummer*.[27] In *Gummer*, the defendant had been arrested for, and found guilty of, violating an Oakwood ordinance that prohibited participating in a parade for which no permit had been obtained.[28] On appeal, the defendant alleged that the ordinance was unconstitutional because the licensing and permit requirement constituted a prior restraint. Oakwood argued that the defendant lacked standing to challenge the ordinance because he had never applied for a permit.

{¶ 39} The Ohio Supreme Court concluded that the defendant had standing to challenge the ordinance. " 'In the area of freedom of expression it is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not his conduct could be proscribed by a properly drawn statute, and whether or

---

26. C.M.C. 910–12(i).

27. *Oakwood v. Gummer* (1974), 38 Ohio St.2d 164, 67 O.O.2d 179, 311 N.E.2d 517.

28. Id.

not he applied for a license.' " [29]  The court acknowledged that standing exists in such cases because of the " 'danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application.' " [30]

{¶ 40} Because of the First Amendment principles implicated by the registration requirement in the present case, we conclude that Dean has standing to challenge C.M.C. 910–12(f) through (i).  Accordingly, we must now determine whether these provisions impose a prior restraint.

### Prior Restraint

{¶ 41} A prior restraint is present "when speech is conditioned on the prior approval of public officials." [31]  There is a constitutional presumption against prior restraints, primarily because of "the risk of censorship associated with the vesting of unbridled discretion in government officials" and " ' "the risk of indefinitely suppressing permissible speech" when a licensing law fails to provide for the prompt issuance of a license.' " [32]

{¶ 42} To survive a constitutional analysis, a prior restraint must provide certain procedural safeguards to protect a person's First Amendment rights.[33]  This court has specified two required safeguards that must be provided. First, "the licensor must decide whether to issue the license within a specified and reasonable time period," [34] and the status quo of the parties must be maintained during this period.[35]  Second, "the licensing procedure must be subject to prompt judicial review." [36]

{¶ 43} C.M.C. 910–12 does require that the registration be issued within a specified and reasonable time.  An applicant is issued a temporary registration

29.  Id. at 168, 67 O.O.2d 179, 311 N.E.2d 517, quoting *Freedman v. Maryland* (1965), 380 U.S. 51, 56, 85 S.Ct. 734, 13 L.Ed.2d 649.

30.  Id., quoting *Natl. Assn. for the Advancement of Colored People v. Button* (1963), 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405.

31.  *Cincinnati v. Jenkins* (2001), 146 Ohio App.3d 27, 30, 764 N.E.2d 1088.

32.  Id., quoting *Nightclubs, Inc. v. Paducah* (C.A.6, 2000), 202 F.3d 884, 889, quoting *FW/PBS, Inc. v. Dallas* (1990), 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603.

33.  Id.

34.  Id.

35.  Id. at 31, 764 N.E.2d 1088.

36.  Id.

immediately. This temporary registration is valid until a permanent registration is issued, which the ordinance provides should occur within ten days. And because of the immediate issuance of a temporary registration, the status quo of the parties is maintained while a determination is made regarding a permanent registration. C.M.C. 910–12 provides the first required safeguard.

{¶ 44} But because the statute fails to provide for prompt judicial review, we hold that it imposes an unconstitutional prior restraint.

{¶ 45} C.M.C. 910–12 provides for an appeal to the court of common pleas. But before an appeal may be taken in court, the ordinance requires an appeal to the city's Office of Administrative Hearings. The ordinance specifically states that once an appeal is filed, the Office of Administrative Hearings shall consider it "within a reasonable time period as set forth within its regulations."

{¶ 46} The ordinance thus specifies no time period in which the Office of Administrative Hearings must issue a decision in an appeal. "Within a reasonable time period" is an ambiguous and open-ended term. We do not presume to impose an exact amount of time in which a decision must be issued. But the ordinance itself must specify a time period to ensure that appeals do not linger in the Office of Administrative Hearings, thus delaying access to judicial review. A party is entitled to know how long an appeal may remain in the Office of Administrative Hearings before the party may appeal to the court of common pleas.

{¶ 47} Accordingly, when judicial review is contingent upon the issuance of a decision from the Office of Administrative Hearings "within a reasonable time period," and when "reasonable time period" is not further defined, we cannot say that C.M.C. 910–12 provides for prompt judicial review.

{¶ 48} Because C.M.C. 910–12 does not provide for prompt judicial review, it imposes a prior restraint. Consequently, we conclude that subdivisions (f) through (i) of C.M.C. 910–12 are unconstitutional.

### Severability

{¶ 49} Having concluded that subdivisions (f) through (i) of C.M.C. 910–12 are unconstitutional but that the statute's remaining subdivisions are constitutional, we must now determine whether the unconstitutional provisions can be severed from the ordinance.

{¶ 50} The Supreme Court of Ohio has established a three-pronged test to determine whether a provision is capable of being severed.[37] The three prongs

---

37. See *Geiger v. Geiger* (1927), 117 Ohio St. 451, 160 N.E. 28.

are as follows: " '(1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect to the former only?' " [38]

{¶ 51} Applying this test, we conclude that subdivisions (f) through (i) of C.M.C. 910–12 can appropriately be severed. The remaining subdivisions of the ordinance are capable of standing alone absent the unconstitutional provisions. The city may regulate solicitation in a content-neutral manner, without requiring solicitors to obtain a registration. And the registration requirement is not so connected with the remaining provisions that the intent of the legislature cannot be carried out. The registration requirement was implemented to assist the city in promoting its interests, but the city's interests are still furthered absent registration. And as we have already noted, the Seventh Circuit Court of Appeals has upheld an almost identical solicitation regulation that did not contain a registration requirement.[39] Moreover, no words or terms need be inserted to separate the constitutional provisions from the unconstitutional ones.

{¶ 52} In addition, C.M.C. 910–12 contains a severability provision expressing the legislature's intent that any provisions found invalid be severed from the statute, and that the remaining provisions be considered independent and valid.[40]

{¶ 53} Dean's conviction is not affected by the provisions we have held to be unconstitutional or by severance of those provisions from the ordinance. Dean was cited for and found guilty of improper solicitation, for soliciting within 20 feet of a crosswalk as prohibited by C.M.C. 910–12(b). This provision is constitutional, and Dean's conviction stands.

### Conclusion

{¶ 54} The trial court did not err in denying Dean's motion to dismiss, because Dean was not cited under an unconstitutional provision of the ordinance. Accordingly, we overrule Dean's assignment of error. But we hold that those provisions of C.M.C. 910–12 imposing a registration requirement, specifically subdivisions (f)

---

38. Id. at 466, 160 N.E. 28, quoting *State v. Bickford* (1913), 28 N.D. 36, 147 N.W. 407.

39. See *Gresham v. Peterson*, 225 F.3d 899.

40. See C.M.C. 910–12(j).

through (i), are unconstitutional and are severed from the statute. The statute's remaining provisions are constitutional and remain valid following our decision.

Judgment affirmed.

WINKLER, J., concurs.

PAINTER, P.J., concurs separately.

PAINTER, Presiding Judge, concurring.

{¶ 55} So now we have an ordinance regulating soliciting *without* a registration requirement. Surely that sloppy drafting can be fixed. I concur in Judge Hendon's excellent analysis.

RALPH WINKLER, J., retired, of the First Appellate District, sitting by assignment.