262 P.3d 637

**STATE of Arizona, Appellee,**

v.

**Timothy J. BOEHLER, Clyde P. Davis, Frank A. Simpson, Appellants.**

**No. 1 CA–CR 10–0297.**

Court of Appeals of Arizona, Division 1, Department B.

Sept. 13, 2011.

Aarón J. Carreón-Aínsa, Phoenix City Prosecutor By Gary L. Shupe, Assistant Phoenix City Prosecutor, Phoenix, Attorneys for Appellee.

Laurie A. Herman, Scottsdale, Attorney for Appellants.

## OPINION

JOHNSEN, Judge.

¶ 1 In this case we invalidate on First Amendment grounds a section of a Phoenix ordinance that bans panhandlers and other solicitors from orally asking passersby for cash after dark. We hold the measure is unconstitutional because it is not narrowly tailored to serve legitimate government interests. Accordingly, we reverse the convictions of three men cited for violating the ordinance by asking passersby for money after an evening baseball game in downtown Phoenix.

## FACTS AND PROCEDURAL HISTORY

¶ 2 After receiving complaints about downtown panhandling, Phoenix police undertook an undercover program to enforce Phoenix City Code ("P.C.C.") section 23–7(B)(4), which makes it unlawful to vocally "solicit any money or other thing of value, or to solicit the sale of goods or services" after dark in a public area. P.C.C. § 23–7(B)(4) (2003). Timothy Boehler was sitting on a downtown sidewalk as undercover officers walked by after an Arizona Diamondbacks game, and he asked the officers if they could spare some change. Not far away, Frank Simpson approached two undercover officers on the street. He said to the officers, "I'm homeless, on the streets. Can you spare some change?" A short while later, officers walked past Clyde Davis, who was sitting on stairs leading to a public garage. Davis asked one of the officers, "Can you help me out? Can you spare some change?" None of the defendants followed, accosted or shouted at any passersby; there were no reports that

any of them behaved aggressively or even impolitely.

¶ 3 The three defendants were convicted in municipal court of violating P.C.C. § 23–7(B)(4). They timely appealed to the superior court, challenging the constitutionality of the ordinance. Their cases were consolidated, and the superior court affirmed the convictions. We have jurisdiction of the defendants' appeal pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(1) (2003) and 22–375(A) (2002).

## DISCUSSION

A. **An Ordinance That Infringes a Substantial Amount of Speech Protected by the First Amendment May Be Unconstitutionally Overbroad.**

¶ 4 The defendants argue that on its face, the measure under which they were convicted is unconstitutionally overbroad, an issue we review de novo. See State v. Russo, 219 Ariz. 223, 225, ¶ 4, 196 P.3d 826, 828 (App.2008). In determining whether an ordinance is invalid on its face, we presume it is constitutional. State v. Seyrafi, 201 Ariz. 147, 149, ¶ 4, n. 4, 32 P.3d 430, 432 (App. 2001). A party challenging an ordinance bears the burden of establishing its invalidity. State v. Lycett, 133 Ariz. 185, 190, 650 P.2d 487, 492 (App.1982).

¶ 5 In the usual situation, one who challenges the constitutionality of a law on its face "must establish that no set of circumstances exists under which the [law] would be valid." United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). The rule is different, however, when First Amendment interests are at stake. See Virginia v. Hicks, 539 U.S. 113, 118, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003). In such a case, courts will invalidate a statute that "reaches a substantial amount of constitutionally protected conduct." Vill. of Hoffman Estates v. Flipside, Hoffman Estates,

Inc., 455 U.S. 489, 494, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); see State v. Weinstein, 182 Ariz. 564, 566, 898 P.2d 513, 515 (App. 1995). Under this doctrine, statutes "that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." City of Houston, Tex. v. Hill, 482 U.S. 451, 459, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). As the Supreme Court has explained, "We have provided this expansive remedy out of concern that the threat of enforcement of an overbroad law may deter or 'chill' constitutionally protected speech—especially when the overbroad statute imposes criminal sanctions." Hicks, 539 U.S. at 119, 123 S.Ct. 2191.

## B. The Ordinance's Application.

¶ 6 The first step in determining whether a law is impermissibly overbroad is to construe it. United States v. Williams, 553 U.S. 285, 293, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008).[1] In 1996, the Phoenix city council adopted Ordinance No. G–3954, amending P.C.C. § 23–7, to address what the council viewed as "the increase in aggressive solicitations throughout the city," which it found had "become extremely disturbing and disruptive to residents and businesses, and has contributed not only to the loss of access to and enjoyment of public places, but also to an enhanced sense of fear, intimidation and disorder." Phoenix, Ordinance No. G–3954 (Sept. 4, 1996). According to the city council, "aggressive solicitation usually includes approaching or following pedestrians, repetitive soliciting despite refusals, the use of abusive or profane language to cause fear and intimidation, unwanted physical contact, or the intentional obstruction of pedestrian traffic." Ordinance No. G–3954.

¶ 7 As enacted in 1996, the ordinance banned soliciting "in an aggressive manner in a public area." P.C.C. § 23–7(B)(1) (1996). It defined "solicit" as

---

1. The State urges us to "construe the [Phoenix ordinance] to limit its permissible reach and render it constitutional," but does not offer any construction by which the challenged portion of the ordinance could survive constitutional review. See Bd. of Airport Comm'rs of L.A. v. Jews

for Jesus, Inc., 482 U.S. 569, 575, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987) (law invalidated when court could "find no apparent saving construction"); State v. Weinstein, 182 Ariz. at 567–68, 898 P.2d at 516–17.

to request an immediate donation or exchange of money or other thing of value from another person, regardless of the solicitor's purpose or intended use of the money or other thing of value. The solicitation may be by spoken, written, or printed word, or by any other means of communication. Soliciting does not include requesting or accepting payment of the fare on a public transportation vehicle by the operator of the vehicle.

P.C.C. § 23–7(A)(6) (1996). The ordinance defined "aggressive manner" to mean

a. Intentionally, knowingly or recklessly making any physical contact with or touching another person in the course of the solicitation without the person's consent; or

b. Approaching or following the person being solicited in a manner that is intended or is likely to cause a reasonable person to fear imminent bodily harm to oneself or another, or damage to or loss of property, or is reasonably likely to intimidate the person being solicited into responding affirmatively to the solicitation; or

c. Continuing to solicit the person from within ten (10) feet after the person has clearly communicated a request that the solicitation stop; or

d. Intentionally, knowingly or recklessly obstructing the safe or free passage of the person being solicited or requiring the person to take evasive action to avoid physical contact with the person making the solicitation. Acts authorized as an exercise of one's constitutional right to picket or protest shall not constitute obstructing passage; or

e. Intentionally, knowingly or recklessly using obscene or abusive language or gestures intended or likely to cause a reasonable person to fear imminent bodily harm

or reasonably likely to intimidate the person being solicited into responding affirmatively to the solicitation.

P.C.C. § 23–7(A)(1) (1996).[2] Finally, the ordinance defined "public area" to include "alleys, bridges, buildings, driveways, parking lots, parks, playgrounds, plazas, sidewalks, and streets open to the general public." P.C.C. § 23–7(A)(5) (1996).

¶ 8 The city council added the provision at issue here in 2003. Extending the reach of the ordinance beyond "aggressive" soliciting, the 2003 amendment prohibits soliciting

[i]n a vocal manner in a public area between sunset and sunrise. However, this prohibition shall not include the act of passively standing or sitting nor performing music, singing or other street performance with a sign or other indication that a donation is being sought, without any vocal request other than in response to an inquiry by another person.

Phoenix, Ordinance No. G–4529 (July 2, 2003). The amended ordinance does not define "vocal manner," but we construe the term to refer to any request made orally, as opposed to a request made in writing or in some unspoken manner. See Random House Webster's Unabridged Dictionary 2129 (2001) (defining "vocal" to mean "of, pertaining to, or uttered with the voice").[3]

¶ 9 Thus, as amended in 2003, the ordinance sweeps widely in several respects. It bans any vocal request in any public area after dark for an "immediate" donation, "regardless of the solicitor's purpose or intended use of the money." P.C.C. § 23–7(A)(6). Likewise prohibited is any vocal request made after dark for an "exchange of money or other thing of value." Id.

**2.** The ordinance also barred soliciting within 15 feet of the door to a bank or an automatic teller machine, in a public transportation vehicle or from persons waiting at a bus stop. P.C.C. § 23–7(B)(2), (3) (1996).

**3.** According to a document titled Request for Council Action, prepared for the council by city staff, the 2003 amendment was proposed "[a]t the request of the Downtown Phoenix Partnership and at the recommendation of the Street

Disorder Task Force" to "address personal safety concerns expressed by downtown employees, visitors and residents." Phoenix, Request for Council Action No. 42440 (July 2, 2003). In describing the amendment, the summary attached to the request said only that it "will generally prohibit panhandling between sunset and sunrise ... [and] will not include passive standing or sitting or the performance of music for donations." Id.

### C. Applicable Legal Principles.

¶ 10 The ordinance's application in any "public area" undoubtedly implicates locations that are public forums, meaning "places which by long tradition or by government fiat have been devoted to assembly and debate." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). *See Hill v. Colorado*, 530 U.S. 703, 715, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000) (sidewalks are among the "'quintessential' public forums for free speech"); *United States v. Grace*, 461 U.S. 171, 177, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983) ("streets, sidewalks, and parks, are considered, without more, to be 'public forums' "). When government seeks to regulate speech in a public forum based on the content of the speech, it "must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Perry*, 460 U.S. at 45, 103 S.Ct. 948. Even a content-neutral regulation of speech in a public forum may survive constitutional scrutiny only if it is "narrowly tailored to serve a significant government interest, and leave[s] open ample alternative channels of communication." *Id.*

### D. Subpart (B)(4) Is Unconstitutionally Overbroad.

¶ 11 As amended in 2003, the ordinance distinguishes between a vocal "solicitation" and other vocal speech. For example, a person standing on a street corner at 8 p.m. asking for cash contributions to a candidate's campaign could be cited for violating the ordinance, while one urging passersby to come to a rally to hear the same candidate speak would avoid citation. A person violates the ordinance by asking passersby after dark to donate change to a church fund for the poor; on the other hand, the ordinance does not apply to a sidewalk proselytizer—as long as he refrains from orally requesting donations. But the amended ordinance does not ban all solicitation. It permits *written* requests for in-hand donations after dark—under the ordinance, one may ask for spare change by silently holding a sign seeking donations. And, subject to other constraints, the ordinance allows oral requests for in-hand donations during daylight and imposes no time-of-day restrictions on oral requests for donations by mail.

¶ 12 As noted, courts apply the most exacting scrutiny to regulations that discriminate based on the subject matter of speech. *See, e.g., Burson v. Freeman*, 504 U.S. 191, 197, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992) ("[T]he First Amendment's hostility to content-based regulation extends not only to a restriction on a particular viewpoint, but also to a prohibition of public discussion of an entire topic."); *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 117, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991) (rejecting argument that strict scrutiny applies "only when the legislature intends to suppress certain ideas"); *Boos v. Barry*, 485 U.S. 312, 321, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988); *Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 530, 536, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980); *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 96, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972) (government "may not select which issues are worth discussing or debating in public facilities"). Accordingly, in determining whether the amended ordinance violates the First Amendment, logically we first would consider whether the distinctions drawn by the ordinance discriminate based on the content of speech. The authorities that guide that determination, however, are not altogether consistent.[4]

---

4. Although the challenged portion of the Phoenix ordinance applies to all manner of vocal solicitations made after dark, the defendants in this case were cited for asking passersby for spare change. The First Amendment protects begging or panhandling when it is conducted peacefully. *See United States v. Kokinda*, 497 U.S. 720, 725, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990) (plurality opinion); *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988); *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980) ("charitable appeals for funds" are protected speech); *Smith v. City of Fort Lauderdale, Fla.*, 177 F.3d 954, 956 (11th Cir.1999); *Loper v. N.Y.C. Police Dep't*, 999 F.2d 699, 704 (2d Cir.1993) ("We see little difference between those who solicit for organized charities and those who solicit for themselves in regard to the message conveyed. The former are

¶ 13 The Supreme Court considered a First Amendment challenge to an anti-solicitation ordinance in *Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 649, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981). At issue there was a rule that forbade solicitors from walking among visitors at a state fair; the rule allowed organizations to solicit and sell materials at the fair only from an assigned booth. *Id.* at 643–44, 101 S.Ct. 2559. Without addressing the distinction the rule drew between solicitation and other speech, the Court held the rule was content-neutral, explaining that it "applie[d] evenhandedly to all who wish to distribute and sell written materials or to solicit funds." *Id.* at 649, 101 S.Ct. 2559. *See Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 704, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992) (Kennedy, J., concurring) (ordinance banning solicitation in airport was content-neutral because it was "directed only at the physical exchange of money, which is an element of conduct interwoven with otherwise expressive solicitation"); *United States v. Kokinda*, 497 U.S. 720, 736, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990) (ordinance prohibiting solicitation on sidewalk outside post office was content-neutral because it was based on the disruptive "nature of solicitation itself") (plurality opinion).

¶ 14 Lower courts addressing other anti-solicitation ordinances have disagreed about whether they are content-neutral. On one hand, courts considering ordinances that prohibit solicitors from entering the street to ask drivers for donations have upheld the ordinances, concluding they are not content-based. *See, e.g., Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 607 F.3d 1178, 1186 (9th Cir.2010) ("general rule [is] that an ordinance regulating solicitation is content neutral if it is aimed at acts of solicitation and 'not at any particular message, idea, or form of speech'" (quoting *Lee*, 505 U.S. at 706, 112 S.Ct. 2701 (Kennedy, J., concurring))); *Ass'n of Cmty. Orgs. for Re-*

form Now v. St. Louis County, 930 F.2d 591, 594 (8th Cir.1991); *Int'l Soc'y for Krishna Consciousness of New Orleans, Inc. v. City of Baton Rouge*, 876 F.2d 494, 497 (5th Cir. 1989) (ordinance was content-neutral because it "applie[d] even-handedly to every organization or individual, regardless of viewpoint, which attempts to solicit"); *ACORN v. City of Phoenix*, 798 F.2d 1260, 1267 (9th Cir. 1986); *People v. Barton*, 8 N.Y.3d 70, 828 N.Y.S.2d 260, 861 N.E.2d 75, 80–81 (2006).

¶ 15 On the other hand, some courts have concluded that ordinances restricting soliciting in other public places are not content-neutral. In *Berger v. Seattle*, 569 F.3d 1029 (9th Cir.2009), the court invalidated an ordinance that prohibited performers from "actively solicit[ing]" donations in a downtown area. *Id.* at 1050. As in this case, the ordinance allowed performers to "passively" solicit donations by use of a written sign. *Id.* The Ninth Circuit held the ordinance impermissibly distinguished between categories of speech based on content. *Id.* at 1051.[5] In *American Civil Liberties Union of Nevada v. City of Las Vegas*, 466 F.3d 784 (9th Cir.2006), the court likewise held an ordinance that banned any solicitation of money or business in a downtown area was content-based:

> The record is crystal clear that handbills containing certain language may be distributed … while those containing other language may not …. Handbills with certain content pass muster; those requesting financial or other assistance do not. Even if this distinction is innocuous or eminently reasonable, it is still a content-based distinction because it "singles out certain speech for differential treatment based on the idea expressed."

*Id.* at 794 (citations omitted). *See S.O.C., Inc. v. County of Clark*, 152 F.3d 1136, 1145 (9th Cir.1998) (ordinance banning commercial leafleting was content-based); *Loper v.*

communicating the needs of others while the latter are communicating their personal needs."); *Benefit v. City of Cambridge*, 424 Mass. 918, 679 N.E.2d 184, 187–88 (1997).

**5.** Quoting Justice Kennedy's concurrence in *Lee*, however, the court observed that "[a] ban on the

actual hand-to-hand exchange of money … [would not be] a content-based regulation of speech because it [would be] 'directed only at the physical exchange of money.'" 569 F.3d at 1051 (quoting 505 U.S. at 705, 112 S.Ct. 2701).

*N.Y.C. Police Dep't,* 999 F.2d 699, 705 (2d Cir.1993) (ordinance prohibiting begging in public places was content-based); *Benefit v. City of Cambridge,* 424 Mass. 918, 679 N.E.2d 184, 189 (1997) (statute that banned begging but permitted requests for money for other purposes was not content-neutral). *But see L.A. Alliance for Survival v. City of Los Angeles,* 22 Cal.4th 352, 93 Cal.Rptr.2d 1, 993 P.2d 334, 346 (2000) ("Restriction on solicitation for immediate donation or exchange of funds may be found to be content neutral for purposes of the First Amendment even if the measure regulates such solicitation while leaving other types of speech untouched."); *State v. Dean,* 170 Ohio App.3d 292, 866 N.E.2d 1134, 1139 (2007) (ordinance forbidding certain vocal solicitations was not content-based because it did not reflect a disagreement with message); *cf. Gresham v. Peterson,* 225 F.3d 899, 906 (7th Cir.2000) (parties agreed ordinance that barred vocal panhandling in public areas after dark was content-neutral); *Smith v. City of Fort Lauderdale, Fla.,* 177 F.3d 954, 956 (11th Cir.1999) (plaintiffs did not dispute that ban on begging on the beach was content-neutral).

¶ 16 We need not try to reconcile these precedents, however, because even if we assume the prohibition added to the Phoenix ordinance in 2003 is content-neutral, it cannot survive constitutional scrutiny. Under the First Amendment, the government may impose a content-neutral restriction on protected speech in a public forum only if the regulation is "narrowly tailored to serve a significant government interest, and leave[s] open ample alternative channels of communication." *Perry,* 460 U.S. at 45, 103 S.Ct. 948. We conclude the provision under which the defendants were cited fails that test because it is not narrowly tailored to serve a significant government interest.

¶ 17 An ordinance is narrowly tailored if it "promotes a substantial government interest that would be achieved less effectively absent the regulation" without burdening "substantially more speech than is necessary to further the government's legitimate interests." *Ward v. Rock Against Racism,* 491 U.S. 781, 799, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (quoting *United States v. Albertini,* 472 U.S. 675, 689, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985)). "Government may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Id.*

¶ 18 The State contends the 2003 amendment to the ordinance is designed to "shield citizens from the fear, intimidation, abusive language, or crime that sometimes accompany solicitation." It further argues that dangers associated with solicitation are "heightened at night, when darkness provides a cover for harassing or criminal conduct." According to materials appended to the Request for Council Action, in adopting the 2003 amendment, the city council acted to "address personal safety concerns expressed by downtown employees, visitors and residents."

¶ 19 The City of Phoenix of course has a significant interest in promoting safety in its public areas after dark. *See Madsen v. Women's Health Ctr. Inc.,* 512 U.S. 753, 768, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994). The 2003 amendment to the solicitation ordinance, however, is not narrowly drawn to achieve that purpose.

¶ 20 Before the amendment, the ordinance already prohibited "aggressive" solicitation, which the ordinance defined to include intentionally or recklessly touching another, "[a]pproaching or following the person being solicited in a manner that is intended or is likely to cause" reasonable fear of bodily harm or intimidation, "[c]ontinuing to solicit the person from within ten feet after the person has clearly communicated a request that the solicitation stop," "obstructing the safe or free passage of the person being solicited" or "using obscene or abusive language or gestures intended or likely to cause" reasonable fear of bodily harm or intimidation. P.C.C. § 23-7(A)(1) (1996). The 2003 amendment, by contrast, bars any cash solicitation spoken after dark in any public area without regard to whether it is made in an abusive, aggressive or intimidating manner. It would prohibit both a cheery shout by a Salvation Army volunteer asking for holiday change and a quiet offer of a box of Girl Scout

cookies by a shy pre-teen if either were uttered on a street corner after dark. *See* P.C.C. § 23–7(B)(4).

¶ 21 For this reason, the 2003 amendment is not "narrowly tailored" to advance the City's interest in sparing citizens from abusive, threatening or harassing acts by panhandlers or other solicitors at night. The pre–2003 ordinance already prohibited all manner of solicitation conducted in an offensive, aggressive or abusive manner; the 2003 amendment broadens the existing prohibition to apply *regardless* of whether a vocal solicitation is abusive, threatening or harassing. *See Berger*, 569 F.3d at 1052–53 (ban on "active solicitation" was broader than necessary to address government interest in curbing "aggressive solicitation"); *Weinberg v. City of Chicago*, 310 F.3d 1029, 1040 (7th Cir.2002) (content-neutral ban on peddling held unconstitutional because peddlers did not "create[ ] the problems the City asserts they cause"); *Perry v. L.A. Police Dep't*, 121 F.3d 1365, 1371 (9th Cir.1997) (content-neutral ban on solicitations on boardwalk by those not affiliated with non-profit organizations was not narrowly tailored); *ISKCON of Potomac, Inc. v. Kennedy*, 61 F.3d 949, 956 (D.C.Cir.1995) (ban on solicitations within designated area on Capitol Mall was not narrowly tailored; visitors "who wish to escape [solicitations] may simply steer clear"); *Hays County Guardian v. Supple*, 969 F.2d 111, 119 (5th Cir.1992) (rule limiting distribution of commercial newspapers on college campus was not narrowly tailored to serve government interests in preventing crime, fraud and litter); *Ayres v. City of Chicago*, 966 F.Supp. 701, 713–14 (N.D.Ill.1997) (ban on peddling in designated district not narrowly tailored).

¶ 22 The State argues the prohibition added by the 2003 amendment is justified because vocal solicitations made in the dark of night are more likely to cause passersby to be fearful and intimidated. The 2003 amendment, however, does not distinguish between solicitations that occur in dark alleyways and solicitations that take place in lighted buildings or well-lit street corners. *See* P.C.C. § 23–7(A)(5), (B)(4).

¶ 23 Moreover, the ban cannot be justified by general concerns about the effect that even peaceful, non-aggressive requests for donations may have on passersby at night. Our constitution does not permit government to restrict speech in a public forum merely because the speech may make listeners uncomfortable. This is not a case such as *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), in which the Supreme Court upheld an adult-theater ordinance because it concluded the law targeted not the films shown in the theaters but instead "*secondary effects*" of such theaters." *Id.* at 47–48, 106 S.Ct. 925. *See Ward*, 491 U.S. at 791–92, 109 S.Ct. 2746 ("Government regulation of expressive activity is content neutral so long as it is '*justified* without reference to the content of the regulated speech.' ") (citations omitted). As Justice O'Connor observed in *Boos*, "[l]isteners' reactions to speech are not the type of 'secondary effects' we referred to in *Renton*." 485 U.S. at 321, 108 S.Ct. 1157.[6] *See id.* at 334, 108 S.Ct. 1157 ("Whatever 'secondary effects' means, I agree that it cannot include listeners' reactions to speech.") (Brennan, J., concurring). *See also R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 394, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992) ("As we said in *Boos v. Barry*, 'Listeners' reactions to speech are not the type of 'secondary effects' we referred to in *Renton*.' ") (citation omitted); *Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123, 134, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992) ("Listeners' reaction to speech is not a content-neutral basis for regulation.").

¶ 24 The State urges us to follow the Seventh Circuit's decision in *Gresham*, in which that court upheld a ban on vocal panhandling after dark because the prohibition applied in places "where [soliciting] is considered especially unwanted or bothersome" or where "people most likely would feel a heightened sense of fear or alarm, or might wish especially to be left alone." 225 F.3d at 906; *see*

---

6. Justices Stevens, Scalia, Brennan and Marshall joined Justice O'Connor's reasoning. 485 U.S. at 313, 334, 108 S.Ct. 1157.

*also Smith,* 177 F.3d at 956–57 (total ban on panhandling on beach was permissible means of serving government interest in "safe, pleasant environment and eliminating nuisance activity on the beach"). We conclude that other portions of the Phoenix ordinance adequately address fearsome or alarming solicitations; as for the 2003 amendment, the First Amendment does not allow the City to restrict speech in a public forum merely because listeners might prefer not to hear a message that may annoy them or make them uneasy. *See Erznoznik v. City of Jacksonville,* 422 U.S. 205, 209, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975) (First Amendment "strictly limits" government's power "selectively to shield the public from some kinds of speech on the ground that they are more offensive than others").

¶ 25 In sum, the burden that P.C.C. § 23-7(B)(4) imposes on protected speech is not narrowly tailored to further the City's legitimate purpose. Because the defendants therefore were convicted in violation of the First Amendment to the United States Constitution, their convictions cannot stand.

## CONCLUSION

¶ 26 For the reasons stated, we hold subsection (B)(4) of P.C.C. § 23-7, which prohibits certain vocal solicitations in any public area between sunset and sunrise, is unconstitutionally overbroad. We therefore reverse the defendants' convictions.

CONCURRING: MICHAEL J. BROWN and JOHN C. GEMMILL, Judges.